Michael A. Sirignano (MS 5263)
Barry I. Levy (BL 2190)
Ryan Goldberg (RG 7570)
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556
(516) 357-3000
*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

LIBERTY MUTUAL INSURANCE COMPANY, LIBERTY MUTUAL FIRE INSURANCE COMPANY, LIBERTY INSURANCE CORPORATION, THE FIRST LIBERTY INSURANCE CORPORATION, LM INSURANCE CORPORATION, LIBERTY MUTUAL MID-ATLANTIC INSURANCE COMPANY, LIBERTY COUNTY MUTUAL INSURANCE COMPANY, LM PROPERTY, CASUALTY INSURANCE COMPANY, SAFECO INSURANCE, COMPANY OF INDIANA, AMERICAN STATES INSURANCE COMPANY, AMERICAN ECONOMY INSURANCE COMPANY, AMERICAN FIRE AND CASUALTY COMPANY, CONSOLIDATED INSURANCE COMPANY, EMPLOYERS INSURANCE COMPANY OF WAUSAU, EXCELSIOR INSURANCE COMPANY, FIRST NATIONAL INSURANCE COMPANY OF AMERICA, INDIANA INSURANCE COMPANY, LM GENERAL INSURANCE COMPANY, OHIO SECURITY INSURANCE COMPANY, PEERLESS INDEMNITY INSURANCE COMPANY, PEERLESS INSURANCE COMPANY, SAFECO INSURANCE COMPANY OF AMERICA, SAFECO NATIONAL INSURANCE COMPANY, THE MIDWESTERN INDEMNITY COMPANY, THE NETHERLANDS INSURANCE COMPANY, THE OHIO CASUALTY INSURANCE COMPANY, WAUSAU BUSINESS INSURANCE COMPANY, WAUSAU GENERAL INSURANCE COMPANY, WAUSAU UNDERWRITERS INSURANCE COMPANY and WEST AMERICAN INSURANCE COMPANY.

Plaintiffs,

Docket No.:_____ (     )

**Plaintiff Demands a Trial by Jury**

**COMPLAINT**

-against-

ELLINA MATSKINA, L.Ac.,
OKSANA LENDEL, L.Ac.,
NATALYA KORNILOVA, L.Ac.,
IGOR SHKAPENYUK, L.Ac.,
LYUBOV KONDRANINA, L.Ac.,
NELLYA RAZZAKOVA, L.Ac.,
ADA KULAGINA, L.Ac.,
TATYANA KAPUSTINA, L.Ac.,
YURY TSUKANOV, L.Ac.,
KARINA KOLOMIYTSEVA, L.Ac.,
ROMAN SHIMUNOV, L.Ac.,
DIMITRY ZAPOLSKY, L.Ac., and
ILONA ABITBOL, L.Ac.,

-and-

OKSLEN ACUPUNCTURE, PC,
BAY NEEDLE ACUPUNCTURE, PC,
PERFECT POINT ACUPUNCTURE, PC,
KARINA K ACUPUNCTURE, PC,
HEALTHY WAY ACUPUNCTURE, PC,
VS CARE ACUPUNCTURE, PC,
ALPHA ACUPUNCTURE, PC,
LOTUS ACUPUNCTURE, PC,
SUNRISE ACUPUNCTURE, PC,
EASY CARE ACUPUNCTURE, PC,
SHIROM ACUPUNCTURE, PC,
URBAN WELL ACUPUNCTURE, PC,
ACUPUNCTURE APPROACH, PC,
SML ACUPUNCTURE, PC,
BRONX ACUPUNCTURE THERAPY, PC,
TC ACUPUNCTURE, PC,
ACUHEALTH ACUPUNCTURE, PC,
NR ACUPUNCTURE, PC,
SILVER LOTUS ACUPUNCTURE, PC, and
NEW CENTURY ACUPUNCTURE, PC,

-and-

ANDREY ANIKEYEV and JOHN DOES
"ONE" THROUGH "FIVE,"

## COMPLAINT

Plaintiffs Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM Insurance Corporation, Liberty Mutual Mid-Atlantic Insurance Company, Liberty County Mutual Insurance Company and LM Property and Casualty Insurance Company ("Liberty Mutual" or "Plaintiff"), as and for its Complaint against the Defendants, hereby allege, upon information and belief, as follows:

## NATURE OF THE ACTION

1.     This action seeks to recover more than $1,500,000.00 that the Defendants have wrongfully obtained from Liberty Mutual through submission of fraudulent acupuncture no-fault claims.   The fraud perpetrated against Liberty Mutual involved various acupuncturists and numerous acupuncture professional corporations, and was spearheaded by a non-acupuncturist layperson, Andrey Anikeyev ("Anikeyev"), who secretly and unlawfully owned and controlled acupuncture professional corporations that submitted millions of dollars in bogus and fraudulent billing to Liberty Mutual.   Anikeyev, who has pled guilty to a substantial part of this scheme, spearheaded the fraud by recruiting licensed acupuncturists who were willing to "sell" their names and licenses to him, so that Anikeyev and other laypersons could illegally control the referral relationships, the provision of acupuncture services, the billing and collection for those services, and ultimately the profits generated from a network of phony acupuncture "practices."

2. The fraudulent scheme can be summarized as follows:

(i) unlicensed non-acupuncturists purchased the use of the acupuncturists' licenses for a nominal sum or some ongoing payment, then used the acupuncturists' licenses to fraudulently incorporate professional corporations (i.e., Okslen Acupuncture, PC, Bay Needle Acupuncture, PC, Perfect Point Acupuncture, PC, Karina K Acupuncture, PC, Healthy Way Acupuncture, PC, VS Care Acupuncture, PC, Alpha Acupuncture, PC, Lotus Acupuncture, PC, Sunrise Acupuncture, PC, Easy Care Acupuncture, PC, Shirom Acupuncture, PC, Urban Well Acupuncture, PC, Acupuncture Approach, PC, SML Acupuncture, PC, Bronx Acupuncture Therapy, PC, TC Acupuncture, PC, Acuhealth Acupuncture, PC, NR Acupuncture, PC, Silver Lotus Acupuncture, PC, and New Century Acupuncture, PC) (collectively referred herein as the "PC Defendants");

(ii) though the professional corporations nominally are owned on paper by the acupuncturists, they actually are secretly owned and controlled by the unlicensed non-acupuncturists;

(iii) the professional corporations serve as vehicles through which fraudulent no-fault claims are submitted to Liberty Mutual and other New York automobile insurers for acupuncture services allegedly provided to individuals involved in automobile accidents in New York ("Insureds");

(iv) the non-physicians establish "management," "billing," and/or "collection" agreements to create the facade of business relationships with the professional corporations, but actually use the "management," "billing," and/or "collection" agreements to unlawfully own and control the professional corporations, and then siphon off the resulting insurance payments to themselves, in contravention of New York law.

(v) the laypeople use the professional corporations to fraudulently bill Liberty Mutual by unbundling, exaggerating and inflating the charges,

(vi) in many cases, the pertinent acupuncture services are performed by independent contractors but are fraudulently billed to Liberty Mutual and other insurers as if they were performed by the professional corporation's employees.

3. Accordingly, in addition to seeking more than $1,500,000.00 that the Defendants have wrongfully obtained from Liberty Mutual through fraudulent no-fault claims, Liberty Mutual seeks a declaration that it is not legally obligated to pay reimbursement of more than

$3,830,000.00 in pending fraudulent claims that have been submitted, or caused to be submitted, by the Defendants through the PC Defendants because:

(i) the PC Defendants have no right to receive payment for any pending bills submitted to Liberty Mutual because the professional corporations are fraudulently incorporated, owned and/or controlled by non-acupuncturists and, therefore, are ineligible to seek or recover no-fault benefits;

(ii) the PC Defendants have no right to receive payment for any pending bills submitted to Liberty Mutual because the professional corporations engaged in unlawful fee-splitting with non- acupuncturists;

(iii) the PC Defendants have no right to receive payment for any pending bills submitted to Liberty Mutual because the billing submitted fraudulently unbundled, exaggerated and inflated the charges; and

(iii) the PC Defendants have no right to receive payment for any pending bills submitted to Liberty Mutual because in many instances the acupuncture services billed were not provided by individuals employed by the professional corporation.

4. The Defendants fall into the following categories:

(i) Defendants, Okslen Acupuncture, PC ("Okslen"), Bay Needle Acupuncture, PC ("Bay Needle"), Perfect Point Acupuncture, PC ("Perfect Point"), Karina K Acupuncture, PC ("Karina K"), Healthy Way Acupuncture, PC ("Healthy Way"), VS Care Acupuncture, PC ("VS"), Alpha Acupuncture, PC ("Alpha"), Lotus Acupuncture, PC ("Lotus"), Sunrise Acupuncture, PC ("Sunrise"), Easy Care Acupuncture, PC ("Easy Care"), Shirom Acupuncture, PC ("Shirom"), Urban Well Acupuncture, PC ("Urban Well"), Acupuncture Approach, PC ("Approach"), SML Acupuncture, PC ("SML"), Bronx Acupuncture Therapy, PC ("Bronx Therapy"), TC Acupuncture, PC ("TC"), Acuhealth Acupuncture, PC ("Acuhealth"), NR Acupuncture, PC ("NR"), Silver Lotus Acupuncture, PC ("Silver Lotus"), and New Century Acupuncture, PC ("New Century") are the "PC Defendants" and are fraudulently incorporated New York acupuncture professional corporations, through which the acupuncture services purportedly were performed and billed to insurance companies, including Liberty Mutual.

(ii) Defendants, Ellina Matskina, L.Ac. ("Matskina"), Oksana Lendel, L.Ac. ("Lendel"), Natalya Kornilova, L.Ac. ("Kornilova"), Igor Shkapenyuk, L.Ac. ("Shkapenyuk"), Lyubov Kondranina, L.Ac. ("Kondranina"), Nellya Razzakova, L.Ac. ("Razzakova"), Ada Kulagina, L.Ac. ("Kulagina"), Tatyana Kapustina, L.Ac. ("Kapustina"), Yury Tsukanov, L.Ac. ("Tsukanov"), Karina Kolomiytseva, L.Ac. ("Kolomiytseva"), Roman Shimunov, L.Ac. ("Shimunov"), Dimitry Zapolsky, L.Ac. ("Zapolsky"), and Ilona Abitbol, L.Ac. ("Abitbol") are the

"Nominal Owners" and are acupuncturists licensed to practice acupuncture in the State of New York who falsely purport to own the PC Defendants.

(iii)    Defendants Andrey Anikeyev ("Anikeyev") is an unlicensed, non-acupuncturist who actually owns and controls the PC Defendants in violation of New York law.

(iv)    John Does "One" through "Five" are individuals and entities, who are presently not identifiable but associated with Anikeyev and the PC Defendants, who are not licensed acupuncturists, but who truly own and control one or more of the PC Defendants with Anikeyev in violation of law.

5.    The Defendants' scheme began in or about 2004 and has continued uninterrupted since that time. To implement their fraudulent scheme, Anikeyev and John Does "One" through "Five" (collectively, the "Management Defendants") recruited licensed acupuncturists, who were willing to sell their licenses to the Management Defendants so as to permit them to unlawfully incorporate the PC Defendants, and use the facade of professional corporations to generate large scale fraudulent billing for acupuncture services to insurers.

6.    As discussed below, the Defendants at all relevant times have known that: (i) the PC Defendants were owned and controlled by non-acupuncturists, not the nominal owners or other licensed or certified acupuncturists; (ii) the PC Defendants were owned and controlled by non-acupuncturists, not the nominal owners or other licensed or certified acupuncturists; (iii) the PC Defendants split fees with non-acupuncturists in contravention of New York law; (iv) the billing codes used for the acupuncture services were often misrepresented, unbundled, and exaggerated the level of services provided in order to inflate the charges submitted to Liberty Mutual; (v) the acupuncture services were performed pursuant to a fraudulently pre-determined protocol; (vi) the charges for the acupuncture services were inflated; and (vii) in many cases, the acupuncture services were performed by independent contractors but fraudulently billed to Liberty Mutual as if they were performed by the professional corporations' employees.

7.    Even so, every NF-3 or HCFA-1500 form (i.e. bill) mailed to Liberty Mutual misrepresented and/or concealed material facts regarding the assertion that the PC Defendants were properly licensed, and therefore, eligible to receive no-fault benefits pursuant to Insurance Law §5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12).  The NF-3's and HCFA-1500 forms further misrepresented and/or concealed the facts that the billed-for services were were performed by independent contractors, and were billed pursuant to a pre-determined, fraudulent treatment and billing protocol.  As such, the PC Defendants do not now have, and never had, any right to be compensated for the bills submitted through them to Liberty Mutual and to other New York automobile insurers.

8.    The charts annexed hereto as Exhibit "1" – "20" summarize, in part, the fraudulent claims identified to date that the Defendants submitted, or caused to be submitted, to Liberty Mutual through the PC Defendants.

## THE PARTIES

### I.    Plaintiffs

9.    Plaintiffs Liberty Mutual Insurance Company and Liberty Mutual Mid-Atlantic Insurance Company are Massachusetts corporations with their principal place of business in Boston, Massachusetts.  Liberty Mutual Insurance Company and Liberty Mutual Mid-Atlantic Insurance Company are authorized to conduct business and to issue policies of automobile insurance in the State of New York.

10.    Plaintiffs Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM General Insurance Company, Peerless Indemnity Insurance Company, and LM Insurance Corporation are Illinois corporations with their principal place of business in Boston, Massachusetts.  Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM General Insurance Company, Peerless Indemnity Insurance Company, and LM Insurance

Corporation are authorized to conduct business and to issue policies of automobile insurance in the State of New York.

11.    Plaintiff Liberty Mutual Fire Insurance Company, Employers Insurance Company of Wausau, Wausau Business Insurance Company, Wausau General Insurance Company and Wausau Underwriters Insurance Company are Wisconsin corporations with its principal place of business in Boston, Massachusetts. Liberty Mutual Fire Insurance Company, Employers Insurance Company of Wausau, Wausau Business Insurance Company, Wausau General Insurance Company and Wausau Underwriters Insurance Company are authorized to conduct business and to issue policies of automobile insurance in the State of New York.

12.    Plaintiff Liberty County Mutual Insurance Company is a Texas corporation with its principal place of business in Boston, Massachusetts. Liberty County Mutual Insurance Company is authorized to conduct business and to issue policies of automobile insurance in the State of New York.

13.    Plaintiffs LM Property and Casualty Insurance Company, and Safeco Insurance Company of Indiana, are Indiana corporations with its principal place of business in Boston, Massachusetts. LM Property and Casualty Insurance Company, and Safeco Company of Indiana are authorized to conduct business and to issue policies of automobile insurance in the State of New York.

14.    Plaintiff American States Insurance Company, American Economy Insurance Company, Consolidated Insurance Company, Indiana Insurance Company, and West American Insurance Company are Indiana corporations with its principal place of business in Boston, Massachusetts. American Economy Insurance Company, Consolidated Insurance Company, Indiana Insurance Company, and West American Insurance Company are Indiana corporations with its principal place of business in Boston, Massachusetts. American States Insurance

8

Company, American Economy Insurance Company, Consolidated Insurance Company, Indiana Insurance Company, and West American Insurance Company are Indiana corporations with its principal place of business in Boston, Massachusetts. American Economy Insurance Company, Consolidated Insurance Company, Indiana Insurance Company, and West American Insurance Company are authorized to conduct business and to issue policies of automobile insurance in the State of New York.

15.    Plaintiff Liberty Insurance Underwriters, Inc. is an Illinois corporation with its principal place of business in New York, New York. Liberty Insurance Underwriters, Inc. is authorized to conduct business and to issue policies of automobile insurance in the State of New York.

16.    Plaintiffs American Fire and Casualty Company, Excelsior Insurance COMpany, First National Insurance Company of America, General Insurance Company of America, Ohio Security Insurance Company, Peerless Insurance Company, Safeco Insurance Company of America, Safeco National Insurance Company, The Midwestern Indemnity Company, The Netherlands Insurance Company and The Ohio Casualty Insurance Company are New Hampshire corporations with its principal place of business in Boston, Massachusetts. American Fire and Casualty Company, Excelsior Insurance COMpany, First National Insurance Company of America, General Insurance Company of America, Ohio Security Insurance Company, Peerless Insurance Company, Safeco Insurance Company of America, Safeco National Insurance Company, The Midwestern Indemnity Company, The Netherlands Insurance Company and The Ohio Casualty Insurance Company are authorized to conduct business and to issue policies of automobile insurance in the State of New York.

## II.    **Defendants**

### A.    **Nominal Owner Defendants**

17. Defendant Matskina is an acupuncturist who has been licensed to practice acupuncture in New York since December 24, 2003, and serves as the nominal or "paper" owner of Bay Needle and Healthy Way. Matskina resides in and is a citizen of New York.

18. Defendant Lendel is an acupuncturist who has been licensed to practice acupuncture in New York since August 25, 2004, and serves as the nominal or "paper" owner of VS and Okslen. Lendel resides in and is a citizen of New York.

19. Defendant Kornilova is an acupuncturist who has been licensed to practice acupuncture in New York since November 5, 2003, and serves as the nominal or "paper" owner of Lotus and Acuhealth. Kolomiytseva resides in and is a citizen of New York.

20. Defendant Shkapenyuk is an acupuncturist who has been licensed to practice acupuncture in New York since January 30, 2004, and serves as the nominal or "paper" owner of TC. Shkapenyuk resides in and is a citizen of New York.

21. Defendant Kondranina is an acupuncturist who has been licensed to practice acupuncture in New York since February 5, 2008, and serves as the nominal or "paper" owner of New Century. Kondranina resides in and is a citizen of New York.

22. Defendant Razzakova is an acupuncturist who has been licensed to practice acupuncture in New York since October 12, 2006, and serves as the nominal or "paper" owner of NR. Razzakova resides in and is a citizen of New York.

23. Defendant Kulagina is an acupuncturist who has been licensed to practice acupuncture in New York since October 4, 2002, and serves as the nominal or "paper" owner of SML and Easy Care. Kulagina resides in and is a citizen of New York.

24. Defendant Kapustina is an acupuncturist who has been licensed to practice acupuncture in New York since September 9, 2003, and serves as the nominal or "paper" owner of Perfect Point. Kapustina resides in and is a citizen of New York.

25. Defendant Tsukanov is an acupuncturist who has been licensed to practice acupuncture in New York since August 25, 2004, and serves as the nominal or "paper" owner of Sunrise and Silver Lotus. Tsukanov resides in and is a citizen of New York.

26. Defendant Kolomiysteva is an acupuncturist who has been licensed to practice acupuncture in New York since January 30, 2004, and serves as the nominal or "paper" owner of Karina K and Alpha. Kolomiytseva resides in and is a citizen of New York.

27. Defendant Shimunov is an acupuncturist who has been licensed to practice acupuncture in New York since September 16, 2004, and serves as the nominal or "paper" owner of Bronx Therapy and Shirom. Shimunov resides in and is a citizen of New York.

28. Defendant Zapolsky is an acupuncturist who has been licensed to practice acupuncture in New York since November 1, 2007, and serves as the nominal or "paper" owner of Approach. Zapolsky resides in and is a citizen of New York.

29. Defendant Abitbol is an acupuncturist who has been licensed to practice acupuncture in New York since September 16, 2004, and serves as the nominal or "paper" owner of Urban Well. Abitbol resides in and is a citizen of New York.

**B.    The PC Defendants**

30. Defendant Okslen is a New York acupuncture professional corporation with its principal place of business in New York. Okslen was fraudulently incorporated in New York on or about November 12, 2004, is owned on paper by Lendel, but in actuality is owned and controlled by unlicensed, uncertified non-acupuncturists in contravention of New York law.

31. Defendant Bay Needle is a New York acupuncture professional corporation with its principal place of business in New York. Bay Needle was fraudulently incorporated in New York on or about March 14, 2005, is owned on paper by Matskina, but in actuality is owned and controlled by unlicensed, uncertified non-acupuncturists in contravention of New York law.

32.     Defendant Perfect Point is a New York acupuncture professional corporation with its principal place of business in New York. Perfect Point was fraudulently incorporated in New York on or about September 23, 2005, is owned on paper by Kapustina, but in actuality is owned and controlled by unlicensed, uncertified non-acupuncturists in contravention of New York law.

33.     Defendant Karina K is a New York acupuncture professional corporation with its principal place of business in New York. Karina K was fraudulently incorporated in New York on or about May 19, 2006, is owned on paper by Kolomiytseva, but in actuality is owned and controlled by unlicensed, uncertified non-acupuncturists in contravention of New York law.

34.     Defendant Healthy Way is a New York acupuncture professional corporation with its principal place of business in New York. Healthy Way was fraudulently incorporated in New York on or about August 21, 2006, is owned on paper by Matskina, but in actuality is owned and controlled by unlicensed, uncertified non-acupuncturists in contravention of New York law.

35.     Defendant VS is a New York acupuncture professional corporation with its principal place of business in New York. VS was fraudulently incorporated in New York on or about October 18, 2006, is owned on paper by O. Lendel, but in actuality is owned and controlled by unlicensed, uncertified non-acupuncturists in contravention of New York law.

36.     Defendant Alpha is a New York acupuncture professional corporation with its principal place of business in New York. Alpha was fraudulently incorporated in New York on or about November 22, 2006, is owned on paper by Kolomiytseva, but in actuality is owned and controlled by unlicensed, uncertified non-acupuncturists in contravention of New York law.

37.     Defendant Lotus is a New York acupuncture professional corporation with its principal place of business in New York. Lotus was fraudulently incorporated in New York on or about January 26, 2007, is owned on paper by Kornilova, but in actuality is owned and controlled by unlicensed, uncertified non-acupuncturists in contravention of New York law.

38.     Defendant Sunrise is a New York acupuncture professional corporation with its principal place of business in New York. Sunrise was fraudulently incorporated in New York on or about October 25, 2007, is owned on paper by Tsukanov, but in actuality is owned and controlled by unlicensed, uncertified non-acupuncturists in contravention of New York law.

39.     Defendant Easy Care is a New York acupuncture professional corporation with its principal place of business in New York. Easy Care was fraudulently incorporated in New York on or about February 13, 2008, is owned on paper by Kulagina, but in actuality is owned and controlled by unlicensed, uncertified non-acupuncturists in contravention of New York law.

40.     Defendant Shirom is a New York acupuncture professional corporation with its principal place of business in New York. Shirom was fraudulently incorporated in New York on or about April 15, 2008, is owned on paper by Shimunov, but in actuality is owned and controlled by unlicensed, uncertified non-acupuncturists in contravention of New York law.

41.     Defendant Urban Well is a New York acupuncture professional corporation with its principal place of business in New York. Urban Well was fraudulently incorporated in New York on or about May 21, 2008, is owned on paper by Abitbol, but in actuality is owned and controlled by unlicensed, uncertified non-acupuncturists in contravention of New York law.

42.     Defendant Approach is a New York acupuncture professional corporation with its principal place of business in New York. Approach was fraudulently incorporated in New York on or about December 26, 2008, is owned on paper by Zapolsky, but in actuality is owned and controlled by unlicensed, uncertified non-acupuncturists in contravention of New York law.

43.     Defendant SML is a New York acupuncture professional corporation with its principal place of business in New York. SML was fraudulently incorporated in New York on or about May 11, 2009, is owned on paper by Kulagina but in actuality is owned and controlled by unlicensed, uncertified non-acupuncturists in contravention of New York law.

44.   Defendant Bronx Therapy is a New York acupuncture professional corporation with its principal place of business in New York. Bronx Therapy was fraudulently incorporated in New York on or about December 4, 2009, is owned on paper by Shimunov, but in actuality is owned and controlled by unlicensed, uncertified non-acupuncturists in contravention of New York law.

45.   Defendant TC is a New York acupuncture professional corporation with its principal place of business in New York. TC was fraudulently incorporated in New York on or about June 24, 2010, is owned on paper by Shkapenyuk, but in actuality is owned and controlled by unlicensed, uncertified non-acupuncturists in contravention of New York law.

46.   Defendant Acuhealth is a New York acupuncture professional corporation with its principal place of business in New York. Acuhealth was fraudulently incorporated in New York on or about June 24, 2010, is owned on paper by Kornilova, but in actuality is owned and controlled by unlicensed, uncertified non-acupuncturists in contravention of New York law.

47.   Defendant NR is a New York acupuncture professional corporation with its principal place of business in New York. NR was fraudulently incorporated in New York on or about October 4, 2010, is owned on paper by Razzakova, but in actuality is owned and controlled by unlicensed, uncertified non-acupuncturists in contravention of New York law.

48.   Defendant Silver Lotus is a New York acupuncture professional corporation with its principal place of business in New York. Silver Lotus was fraudulently incorporated in New York on or about December 2, 2010, is owned on paper by Tsukanov, but in actuality is owned and controlled by unlicensed, uncertified non-acupuncturists in contravention of New York law.

49.   Defendant New Century is a New York acupuncture professional corporation with its principal place of business in New York. New Century was fraudulently incorporated in New

York on or about December 9, 2010, is owned on paper by Kondranina, but in actuality is owned and controlled by unlicensed, uncertified non-acupuncturists in contravention of New York law.

### C. The Management Defendants

50. Defendant Anikeyev resides in and is a citizen of the State of New Jersey. Anikeyev never has been a licensed or certified acupuncturist, yet has secretly owned, controlled, and derived economic benefit from the PC Defendants in contravention of New York law.

51. Defendants John Does "One" through "Five" reside in and are citizens of the State of New York and or New Jersey. John Does "One" through "Five" are individuals and entities, who are presently not identifiable but associated with the PC Defendants and Anikeyev, and who have secretly owned, controlled, and derived economic benefit from the PC Defendants in contravention of New York law.

### JURISDICTION AND VENUE

52. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states. Pursuant to 28 U.S.C. § 1331, this Court also has jurisdiction over the claims brought under 18 U.S.C. §§ 1961 et seq. (the Racketeer Influenced and Corrupt Organizations ("RICO") Act because they arise under the laws of the United States. In addition, this Court has supplemental jurisdiction over the subject matter of the claims asserted in this action pursuant to 28 U.S.C. § 1367.

53. Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the Eastern District of New York is the District where one or more of the Defendants reside and because this is the District where a substantial amount of the activities forming the basis of the Complaint occurred.

## ALLEGATIONS COMMON TO ALL CLAIMS

## I.   An Overview of the No-Fault Laws and Licensing Statutes

54.   Liberty Mutual underwrites automobile insurance in New York.

55.   New York's No-Fault laws are designed to ensure that injured victims of motor vehicle accidents have an efficient mechanism to pay for and receive the healthcare services that they need. Under New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law §§ 5101, et seq.) and the regulations promulgated pursuant thereto (11 N.Y.C.R.R. §§ 65, et seq.)(collectively referred to as the "No-Fault Laws"), automobile insurers are required to provide Personal Injury Protection Benefits ("No-Fault Benefits") to Insureds.

56.   No-Fault Benefits include up to $50,000.00 per Insured for necessary expenses that are incurred for health care goods and services.

57.   An Insured can assign his or her right to No-Fault Benefits to the providers of healthcare services in exchange for those services. Pursuant to a duly executed assignment, a healthcare provider may submit claims directly to an insurance company within forty-five days of the date of service and receive payment for medically necessary services, using the claim form required by the New York State Department of Insurance (known as "Verification of Treatment by Attending Physician or Other Provider of Health Service" or more commonly as an "NF-3"). In the alternative, a healthcare provider may submit claims using the Health Care Financing Administration insurance claim form (known as the "HCFA-1500 Form").

58.   The No-Fault Laws obligate individuals and healthcare providers that seek payment of No-Fault Benefits to provide insurers with additional verification in order to establish proof of their claims.

59.   The prescribed No-Fault policy endorsement set forth in 11 N.Y.C.R.R. § 65-1.1 provides, in pertinent part, that "[u]pon request by the Company, the eligible injured person or

that person's assignee . . . shall ... (b) as may reasonably be required, submit to an examination under oath by any person named by the Company, and shall subscribe to same . . . , and (d) provide any other pertinent information that may assist the Company in determining the amount that is payable."

60.     Pursuant to the No-Fault Laws, professional corporations are not eligible to bill for or collect No-Fault Benefits if they are fraudulently incorporated. In New York, only a licensed physician (or acupuncturist as the case may be) may: (i) practice medicine (or acupuncture); (ii) own or control a professional corporation authorized to practice medicine (or acupuncture); (iii) employ or supervise other physicians (or acupuncturist); and (iv) derive economic benefit from physician (or acupuncture) services.  In New York, unlicensed laypersons may not: (i) practice medicine or acupuncture; (ii) own or control a professional corporation authorized to practice medicine or acupuncture; (iii) employ or supervise physicians or acupuncturists; or (iv) derive economic benefit from physician or acupuncture services.

61.     In State Farm Mut. Auto. Ins. Co. v. Mallela, 4 N.Y.3d 313, 320 (2005), the New York Court of Appeals made clear that healthcare providers that fail to comply with licensing requirements are ineligible to collect No-Fault Benefits, and that insurers may look beyond a facially-valid license to determine whether there was a failure to abide by state and local law.

62.     Pursuant to the No-Fault Laws, health care service providers are not eligible to receive No-Fault Benefits if they engage in fee-splitting, which is prohibited by, inter alia, New York's Education Law.

63.     Additionally, New York law requires that the shareholders of a professional corporation be engaged in the practice of the profession through the professional corporation in order for it to be lawfully licensed. Under the No-Fault Laws, professional corporations are not

eligible to receive No-Fault Benefits if they are owned by physicians/acupuncturists, etc., who do not engage in the practice of their profession through the professional corporation.

64.     The implementing regulation adopted by the Superintendent of Insurance, 11 N.Y.C.R.R. § 65-3.16(a)(12), provides, in pertinent part, as follows:

> A provider of health care services is not eligible for reimbursement under section 5102(a)(1) of the Insurance Law if the provider fails to meet any applicable New York State or local licensing requirement necessary to perform such service in New York ... (emphasis supplied).

65.     Pursuant to the No-Fault Laws, only health care providers in possession of a direct assignment of benefits are entitled to bill for or collect No-Fault Benefits. There is both a statutory and regulatory prohibition against payment of No-Fault Benefits to anyone other than the patient or his/her healthcare provider. The implementing regulation adopted by the Superintendent of Insurance, 11 N.Y.C.R.R. § 65-3.11, provides, in pertinent part, as follows:

> An insurer shall pay benefits for any element of loss .... directly to the applicant or, ... upon assignment by the applicant .... shall pay benefits directly to providers of health care services as covered under section five thousand one hundred two (a)(1) of the Insurance Law... . (emphasis supplied).

66.     For a healthcare provider to be eligible to bill for and to collect charges from an insurer for acupuncture services pursuant to N.Y. Ins. Law § 5102(a), it must be the actual provider of the service. Under the No-Fault Laws, a professional service corporation is not eligible to bill for services, or to collect for those services from an insurer, where the services were rendered by persons who are not employees of the professional corporation, such as independent contractors.

67.     Pursuant to N.Y. Ins. Law § 403, all bills submitted by a healthcare provider to Liberty Mutual and all other insurers must be verified by the healthcare provider subject to – in substance – the following warning:

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime … .

## II.    An Overview of the Fraudulent Incorporation and Operation of the PC Defendants and Anikeyev's Admission to Participating in the Fraudulent Scheme

68.     Beginning in 2004, and continuing through the present day, Defendants have carried out a fraudulent scheme in which the PC Defendants – 20 acupuncture professional service corporations separately owned on paper by the Nominal Owners, but actually illegally owned and controlled by non-acupuncturists – have been used to bill the New York automobile insurance industry millions of dollars that they never were eligible to receive.

69.     As part of this massive scheme, the PC Defendants purport to be 20 separate and independently owned acupuncture professional corporations.   However, none of the PC Defendants maintain stand-alone practices; none identify the name of the purported acupuncturist-owner on their letterhead; none have internet websites or appear to advertise for patients; none make their location readily known to the general public, and none bill legitimately for acupuncture treatment that reflects the exercise of independent acupuncture judgment.

70.     Instead, the PC Defendants were, and continue to be, illegally owned and controlled by Anikeyev and the Management Defendants, who operated the professional corporations through a network of medical "clinics" located throughout the New York City area (the "No-Fault Medical Mills") where each Insured was subjected to a cookie-cutter pattern of predetermined treatment.  In exchange for payment of fees for referrals and/or kickbacks to the owners of the No-Fault Medical Mills, Anikeyev and the Management Defendants gained access to the patients of these No-Fault Medicals Mills, which in turn permitted Defendants to bill for bogus and fraudulent acupuncture services under the names of the PC Defendants.

71.     As set forth in detail below, Anikeyev and the Management Defendants recruited the Nominal Owners to essentially "sell" their acupuncture licenses to them so that they could fraudulently incorporate the professional corporations and use them to submit large-scale fraudulent billing to insurers. The Nominal Owner of each PC Defendant in actuality is nothing more than a glorified employee. True ownership and control of each PC Defendant has rested at all times entirely with Anikeyev and the Management Defendants, who used the façade of the professional corporations to do indirectly what they are forbidden from doing directly, namely: (i) employing acupuncturists; (ii) controlling their practices; and (iii) charging for and deriving an economic benefit from their services.

72.     Anikeyev has pled guilty to a substantial part of this scheme, as he spearheaded the fraud.

73.     Anikeyev spearheaded the fraud by establishing the professional corporations, recruiting the licensed acupuncturists who were willing to "sell" their names and licenses to him and other laypersons, entering into illegal referral relationships to ensure a steady supply of Insureds, and controlling the provision of acupuncture services, the billing and collection for those services, and ultimately the profits generated from a network of phony acupuncture "practices" -- all so that Anikeyev and other laypersons could generate immense profits from fraudulent acupuncture treatment and services.

74.     On or about February 29, 2012, a federal indictment (the "February 2012 Indictment") was unsealed in the United States District Court for the Southern District of New York. The February 2012 Indictment charged Anikeyev (and many others), with two or more crimes, including RICO Conspiracy, Conspiracy to Commit Health Care Fraud, Conspiracy to Commit Mail Fraud and Conspiracy to Commit Money Laundering, committed in connection with a massive scheme to defraud New York automobile insurance companies of more than $279

million under New York's no-fault insurance laws. See United States of America v. Zemlyansky, 12-CR-00171 (S.D.N.Y. 2012) (JPO). A copy of the February 2012 Indictment is annexed hereto as Exhibit "21."

75. The February 2012 Indictment averred that Anikeyev participated in a vast RICO criminal enterprise whereby non-professionals controlled medical clinics (akin to the allegations in this case) by paying licensed medical practitioners (including acupuncturists) to use their licenses to incorporate the professional corporations; paid kickbacks to runners who recruited automobile accident passengers to receive medically unnecessary treatments from the no-fault clinics; and instructed the clinic owners to prescribe excessive and unwarranted referrals for various "modality treatments" for every patient they saw. See Exhibit "21."

76. During the Zemlyansky Action, the United States Attorney filed papers in the action setting forth a list of fraudulently incorporated professional corporations set up by the defendants "for the sole purpose of defrauding insurance companies in the State of New York." According to the United States Attorney's list, 19 of the 20 PC Defendants (all but SML) were identified as professional corporations associated with Anikeyev and used in furtherance of the fraudulent scheme to defraud insurance companies. A copy of the Government's October 26, 2012 Opposition, with attached list of the PCs used to commit fraud, is annexed hereto as Exhibit "22."

77. The February 2012 Indictment, supplemented by the United States Attorney's October 26, 2012 list of fraudulently incorporated professional corporations that were used in the insurance fraud, alleges facts indicating that:

- 19 of the 20 PC Defendants were owned "on paper" by the Nominal Owners, but in actuality they were truly owned and controlled by Anikeyev.

- The PC Defendants were used as vehicles to submit large-scale fraudulent no-fault billing to automobile insurers for medically unnecessary treatments and treatments that never were provided in the first instance.

- Anikeyev paid kickbacks to referring healthcare providers in exchange for which the referring healthcare providers referred patients for medically unnecessary acupuncture services.

- Anikeyev – rather than the Nominal Owners – received most, if not all, of the profits from the PC Defendants.

Id.

78.    On March 15, 2013, Anikeyev pled guilty to one count of conspiracy to commit health care and mail fraud in a superseding Information, and he agreed that as to the other counts against him he was not a "prevailing party." Copies of the Information and Anikeyev's guilty pleas in the Zemlyansky Action are annexed hereto collectively as Exhibit "23." During his allocution, Anikeyev admitted that from 2008 to 2012 he "agreed with others to commit health care and mail fraud" and "submitted bills through mail…for acupuncture services I knew were false…these bills requested payments for health care services for time periods in excess of the actual time period the patient spent with the acupuncturist." A copy of Anikeyev's allocution is annexed hereto as Exhibit "24."

79.    Anikeyev's plea agreement also provides for forfeiture of all property "from the gross proceeds traceable to the commission of the offense charged…including but not limited to the sum of $4,102,273.67…including all funds seized" from the corporate accounts of (i) Acuhealth; (ii) Bay Needle; (iii) New Century; (iv) VS; and (v) TC, essentially admitting he illegally owned and controlled these PCs. See Exhibit "23."

80.    In papers filed by Anikeyev in support of his sentencing and in opposition to government motions, Anikeyev admitted to operating a medical billing company which was responsible for submitting bills to insurance companies. This billing company was the vehicle

through which the fraudulent bills were provided to Liberty Mutual. See Affidavit annexed hereto as Exhibit "25."

81.     Anikeyev was sentenced to a multi-year prison sentence in connection with the Government's criminal proceedings brought in the Zemlyansky Action.

82.     In addition to the Government's prosecution, the involvement by Anikeyev and the other Defendants in this fraudulent scheme has been detailed in the past by civil court complaints filed by other insurance companies.

83.     In 2010, Anikeyev was sued by State Farm in New York State Supreme Court (State Farm v. Anikeyev, et. al., Index No.: 4399/10 (Supreme Ct. Nassau Cty. 2010)), alleging that Anikeyev, a non-physician, illegally controlled, managed and operated numerous other acupuncture professional corporations, in contravention of New York law. After nearly three of litigation, Justice Steven Jaeger, among other things, struck defenants' answers, issued default judgment, and found that "the overwhelming evidence indicates that the PC Defendants were not owned and controlled by a licensed acupuncturist, thereby rendering them ineligible to receive reimbursement..." Id., April 29, 2013. Some of the professional corporations at issue in the State Farm litigation also were previously determined to be fraudulently incorporated and ineligible to seek reimbursement for their alleged acupuncture services during the course of AAA No-Fault arbitration proceedings.

84.     In 2011, Anikeyev and nearly the same group of defendants herein were sued by GEICO in the United States District Court for the Eastern District of New York (GEICO v. Razzakova., et al., CV 11-CV-4237 (FMB)(SMG). During the course of the GEICO litigation, papers were filed with the United States District Court containing evidence that the PC Defendants engaged in money-siphoning and dissipation activities. For example, checks from the PC Defendants filed in that case showed that most, if not all, of the 20 purportedly separate

acupuncture PCs were making regular and substantial payments to illegal escort services/brothels in Brooklyn, New York, which had been recently indicted by the Kings County DA as part of a crime ring. In addition, the PC Defendants appeared to have been regularly funneling thousands of dollars per month to, among other suspect entities, a series of Florida companies with ties to Anikeyev, his relatives and his billing company.

### III.  The Fraudulent Incorporation of Operation of the PC Defendants

85.  Although the Nominal Owners are listed as the owners of the PC Defendants on the certificates of incorporation, they exercise no ownership or control over the acupuncture services provided or the profits generated from the medical professional corporations. Instead, the day-to-day operations, supervisory control, and true ownership of the PC Defendants rests in the hands of Anikeyev and the Management Defendants.

86.  Due to the Management Defendants' unlawful control and illegal ownership over the PC Defendants, the Nominal Owners have never been true shareholders, directors, or officers, and never had any true ownership interest in or control over the professional corporation. True ownership and control has rested at all times entirely with Anikeyev and the Management Defendants, who used the façade of the professional corporations to do indirectly what they are forbidden from doing directly, namely to: (i) employ acupuncturists; (ii) control their practices; and (iii) charge for and derive an economic benefit from their services.

87.  Throughout the course of the Nominal Owners' relationships with Anikeyev and the Management Defendants, all decision-making authority relating to the operation and management of the PC Defendants vested entirely with the Management Defendants. This included control over the treatment protocols for patients; the hiring of acupuncturists who allegedly performed the services; the control over how the services were billed to insurers,

including Liberty Mutual; and how the profits of the PC Defendants were dispersed by the professional corporations.

88.     The Management Defendants, specifically, Anikeyev would arrange for the PC Defendants to be supplied acupuncture supplies and supplied the PC Defendants with treating acupuncturists, who would render services on behalf of the PC Defendants under the direction and control of the Management Defendants.  Anikeyev controlled a large syndicate of treating acupuncturists who rotated between the PC Defendants (as well as numerous other acupuncture providers).  These treating acupuncturists were essentially employees of Anikeyev and the Management Defendants and not of the PC Defendants.  Anikeyev and the Management Defendants would then use their control over the PC Defendants to control the treatment and billing protocols in order to derive economic benefit from their services.

89.     In addition to controlling the operations, finances, and management of the PC Defendants, Anikeyev and the Management Defendants controlled the treatment and billing protocols for each of the PC Defendants.  For example, despite purporting to be 20 separate and independently owned acupuncture professional corporations, all 20 of the PC Defendants utilized boilerplate and virtually identical initial examination reports that did not change based on the patients' symptoms or diagnosis.  Virtually every report submitted to Liberty Mutual by the PC Defendants contained the same language regardless of which PC the treatment was performed under, regardless of which acupuncturist performed the treatment, and most importantly, regardless of the patients' particular symptoms and complaints.

90.     These reports, which started with Okslen and continued uninterrupted throughout the entire scheme, are nothing more than boilerplate, template reports that did not change based on the patients' symptoms or diagnosis.  Virtually every report submitted to Liberty Mutual by the PC Defendants contained the same language in the "Treatments and Recommendations"

section, the "Comments" section and the "Prognosis" section. The Management Defendants were so brazen in their scheme that virtually every report, submitted by the 20 professional corporations, contained the same typographical errors in the "Comments" and "Prognosis" sections. The "Comments" section for almost every PC contained the phrase, "I fell that there is a direct casual relationship between the accident described and current injuries." (emphasis added). Indeed, for every PC, the "Prognosis" section states: "The prognosis of the patient's consultation in regard to a full and complete recovery to state as exited to the accident" is (or in most cases) "in guarded." (emphasis added).

91.     Additionally, virtually all reports are prepared on a form which only lists the name of the professional corporation and no other information. Copies of virtually identical initial examination reports are annexed hereto as Exhibit "26."

92.     In addition to controlling the operations of the professional corporation, the Management Defendants supervised and controlled the treatment and billing protocols for all 20 PC Defendants. As admitted in his allocution, Anikeyev required the PC Defendants to submit fraudulent billing for services not rendered. For example, it was standard protocol for the PC Defendants to bill Liberty Mutual for 45-60 minutes of treatment, per patient, per day, knowing very well that no patient received 45-60 minutes of treatment. The Management Defendants caused the PC Defendants to engage in a pre-determined fraudulent treatment protocol designed to generate large-scale billing in order to financially enrich the Defendants, without regard to the exercise of any legitimate acupuncture judgment by any true-acupuncture owner.

93.     To conceal their true ownership and control of the 20 separate PC Defendants while simultaneously effectuating pervasive, total control over its operation and management, the Anikeyev and the Management Defendants arranged to have the PC Defendants and Nominal

Owners enter into a purported "billing" arrangement with them. This allowed for the Management Defendants to siphon off the profits of the PC Defendants.

94.    While the "billing" arrangement ostensibly was created to permit the Management Defendants to provide alleged billing services, it was actually used solely as a tool to permit them: (i) to control the day-to-day operations, exercise supervisory authority over, and illegally own the PC Defendants; and (ii) to siphon all of the profits that were generated by the billings submitted to Liberty Mutual and other insurers through the PC Defendants.

95.    Anikeyev and the Management Defendants intentionally utilized an ever-changing number of professional corporations, with different names and different tax identification numbers, in order to reduce the amount of billing submitted through any single professional corporation, in an attempt to prevent Liberty Mutual and other New York insurers from identifying their illegal control over the professional corporations and the fraudulent charges submitted through any one entity

**A.    The Fraudulent Incorporation and Operation of Okslen**

96.    The Defendants' fraudulent scheme commenced in 2004, when they fraudulently incorporated Okslen as a vehicle that the Managements Defendants could unlawfully own and control. The Management Defendants recruited O. Lendel who was willing to "sell" her acupuncture license so that they could fraudulently incorporate Okslen and use it to submit large-scale fraudulent billing to insurers.

97.    In exchange for a designated salary or other form of compensation, O. Lendel agreed to falsely represent in the certificate of incorporation filed with the Department of Education, and the biennial statements filed thereafter, that she is the true shareholder, director and officer of Okslen and that she truly owns, controls and practices through the professional corporation.

98.     Once Okslen was fraudulently incorporated on or about November 12, 2004, O.
Lendel ceded true beneficial ownership and control over the professional corporation to the
Management Defendants, who then caused Okslen to operate from numerous locations that
housed other fraudulent medical providers.

99.     Throughout the course of O. Lendel's relationship with the Management
Defendants, all decision-making authority relating to the operation and management of Okslen
has been vested entirely with the Management Defendants.  This includes control over the
treatment protocols for patients; the hiring of acupuncturists who allegedly perform the services;
the control over how the services will be billed to insurers, including Liberty Mutual; and how
the profits of Okslen are dispersed by the professional corporation.  In reality, O. Lendel never
has been anything more than a de facto employee of the Management Defendants and Okslen.

100.    In addition to controlling the operations of the professional corporation, the
Management Defendants supervised and controlled the treatment and billing protocols for
Okslen.  For example, it was standard protocol for Okslen to bill Liberty Mutual for 45-60
minutes of treatment, per patient, per day, knowing very well that no patient received 45-60
minutes of treatment.  Further, the Management Defendants would require Okslen to provide
insurers, including Liberty Mutual, with fraudulent boilerplate initial examination reports that
contained identical sections as reports from other PC Defendants.  See Exhibit "26."

101.    The February 2012 Indictment, supplemented by the United States Attorney's
October 26, 2012 list of fraudulently incorporated professional corporations, avers that Okslen was
illegally owned and controlled by Anikeyev and used as a vehicle to submit large-scale fraudulent
no-fault billing to automobile insurers for medically unnecessary treatments and treatments that
never were provided in the first instance.  See Exhibits "21-22."

**B.    The Fraudulent Incorporation and Operation of Bay Needle**

102.    The Defendants' fraudulent scheme continued in 2005, when they fraudulently incorporated Bay Needle as a vehicle through which they could unlawfully own and control. The Management Defendants recruited Matskina who was willing to "sell" her acupuncture license to them so that they could fraudulently incorporate Bay Needle and use it to submit large-scale fraudulent billing to insurers.

103.    In exchange for a designated salary or other form of compensation, Matskina agreed to falsely represent in the certificate of incorporation filed with the Department of Education, and the biennial statements filed thereafter, that she is the true shareholder, director and officer of Bay Needle and that she truly owns, controls and practices through the professional corporation.

104.    Once Bay Needle was fraudulently incorporated on or about March 14, 2005, Matskina ceded true beneficial ownership and control over the professional corporation to the Management Defendants.

105.    Throughout the course of Matskina's relationship with the Management Defendants, all decision-making authority relating to the operation and management of Bay Needle has been vested entirely with the Management Defendants.  This includes control over the treatment protocols for patients; the hiring of acupuncturists who allegedly perform the services; the control over how the services will be billed to insurers, including Liberty Mutual; and how the profits of Bay Needle are dispersed by the professional corporation.  In reality, Matskina never has been anything more than a de facto employee of the Management Defendants and Bay Needle.  Matskina did not practice acupuncture or provide any services through the professional corporation.

106. In addition to controlling the operations of the professional corporation, the Management Defendants supervised and controlled the treatment and billing protocols for Bay Needle. For example, it was standard protocol for Bay Needle to bill Liberty Mutual for 45-60 minutes of treatment, per patient, per day, knowing very well that no patient received 45-60 minutes of treatment. Further, the Management Defendants would require Bay Needle to provide insurers, including Liberty Mutual, with fraudulent boilerplate initial examination reports that contained identical sections as reports from other PC Defendants. See Exhibit "26."

107. Matskina admitted to Liberty Mutual that a company known as Sylvan Group handled all billing on behalf of Bay Needle. Sylvan Group ties to Anikeyev, who has admitted to running a billing company in Coney Island, Brooklyn that was at the center of a search and seizure operation by law enforcement. Additionally, Anikeyev provided Bay Needle with the treating acupuncturists that rendered the services to Insureds. Matskina did not hire, train or supervise any acupuncturist who allegedly provided services to patients of Bay Needle and did not supervise the treatment allegedly provided to any of the patients. Instead, the Management Defendants performed all of the hiring and supervision of acupuncture and non-acupuncture personnel at Bay Needle. The treating acupuncturists were not paid as employees of Bay Needle, but were paid on a 1099 Independent Contractor basis.

108. In fact, one of the treating acupuncturists who rendered services at Bay Needle based on bills submitted to Liberty Mutual, when advised that billing was submitted by Bay Needle for services he allegedly rendered, admitted he did not even recognize the names "Bay Needle" or "Matskina." He admitted he was sent to different acupuncture facilities by a "Karina" (who is believed to be Karina Kolomiytseva, an acupuncturist with numerous ties to Anikeyev) and that he was always paid on a 1099 basis as an independent contractor.

109.     The February 2012 Indictment, supplemented by the United States Attorney's October 26, 2012 list of fraudulently incorporated professional corporations, avers that Bay Needle was illegally owned and controlled by Anikeyev and used as a vehicle to submit large-scale fraudulent no-fault billing to automobile insurers for medically unnecessary treatments and treatments that never were provided in the first instance.  See Exhibits "21-22."

110.     As noted above, Anikeyev consented to forfeiture of all funds seized by the Government from the bank account of Bay Needle, as proceeds traceable to the commission of his admitted crime, as part of his guilty plea.

### C.     The Fraudulent Incorporation and Operation of Perfect Point

111.     The series of schemes continued with the incorporation of Perfect Point, in or about 2005, when the Management Defendants recruited Kapustina who was willing to essentially "sell" her acupuncture license to them so that they could fraudulently incorporate Perfect Point and use it to submit large-scale fraudulent billing to insurers.

112.     In order to circumvent New York law and to induce the State Education Department to issue a certificate of authority authorizing Perfect Point to operate an acupuncture practice, the Management Defendants entered into a secret scheme with Kapustina. In exchange for a designated salary or other form of compensation, in September 2005, Kapustina agreed to falsely represent in the certificate of incorporation filed with the Department of Education, and the biennial statements filed thereafter, that she is the true shareholder, director and officer of Perfect Point and that she truly owns, controls and practices through the professional corporation.

113.     Once Perfect Point was fraudulently incorporated on or about September 23, 2005, Kapustina ceded true beneficial ownership and control over the professional corporation to the Management Defendants.

114. In addition to controlling the operations of the professional corporation, the Management Defendants supervised and controlled the treatment and billing protocols for Okslen. For example, it was standard protocol for Perfect Point to bill Liberty Mutual for 45-60 minutes of treatment, per patient, per day, knowing very well that no patient received 45-60 minutes of treatment. Further, the Management Defendants would require Perfect Point to provide insurers, including Liberty Mutual, with fraudulent boilerplate initial examination reports that contained identical sections as reports from other PC Defendants. See Exhibit "26."

115. The February 2012 Indictment, supplemented by the United States Attorney's October 26, 2012 list of fraudulently incorporated professional corporations, alleges that Perfect Point was illegally owned and controlled by Anikeyev and used as a vehicle to submit large-scale fraudulent no-fault billing to automobile insurers for medically unnecessary treatments and treatments that never were provided in the first instance. See Exhibits "21-22."

**D.      The Fraudulent Incorporation and Operation of Karina K**

116. The series of schemes continued with the incorporation of Karina K, in or about 2006, when the Management Defendants recruited Kolomiytseva who essentially was willing to essentially "sell" her acupuncture license to them so that they could fraudulently incorporate Karina K and use it to submit large-scale fraudulent billing to insurers.

117. In order to circumvent New York law and to induce the State Education Department to issue a certificate of authority authorizing Karina K to operate an acupuncture practice, the Management Defendants entered into a secret scheme with Kolomiytseva. In exchange for a designated salary or other form of compensation, in May 2006, Kolomiytseva agreed to falsely represent in the certificate of incorporation filed with the Department of Education, and the biennial statements filed thereafter, that she is the true shareholder, director

and officer of Karina K and that she truly owns, controls and practices through the professional corporation.

118. Once Karina K was fraudulently incorporated on or about May 19, 2006, Kolomiytseva ceded true beneficial ownership and control over the professional corporation to the Management Defendants. In reality, Kolomiytseva never has been anything more than a _de facto_ employee of the Management Defendants and Karina K, as she merely occasionally provided acupuncture treatments through the professional corporation.

119. In addition to controlling the operations of the professional corporation, the Management Defendants supervised and controlled the treatment and billing protocols for Karina K. For example, it was standard protocol for Karina K to bill Liberty Mutual for 45-60 minutes of treatment, per patient, per day, knowing very well that no patient received 45-60 minutes of treatment. Further, the Management Defendants would require Karina K to provide insurers, including Liberty Mutual, with fraudulent boilerplate initial examination reports that contained identical sections as reports from other PC Defendants. See Exhibit "26."

120. The February 2012 Indictment, supplemented by the United States Attorney's October 26, 2012 list of fraudulently incorporated professional corporations, alleges that Karina K was illegally owned and controlled by Anikeyev and used as a vehicle to submit large-scale fraudulent no-fault billing to automobile insurers for medically unnecessary treatments and treatments that never were provided in the first instance. See Exhibits "21-22."

E.    The Fraudulent Incorporation and Operation of Healthy Way

121. The series of schemes continued with the incorporation of Healthy Way, in or about 2006, when the Management Defendants convinced Matskina to again essentially "sell" her acupuncture license to them so that they could fraudulently incorporate Health Way and use it to submit large-scale fraudulent billing to insurers.

122. In order to circumvent New York law and to induce the State Education Department to issue a certificate of authority authorizing Healthy Way to operate an acupuncture practice, the Management Defendants again entered into a similar secret scheme with Matskina. In exchange for a designated salary or other form of compensation, in August 2006, Matskina agreed to falsely represent in the certificate of incorporation filed with the Department of Education, and the biennial statements filed thereafter, that she is the true shareholder, director and officer of Healthy Way and that she truly owns, controls and practices through the professional corporation.

123. Once Healthy Way was fraudulently incorporated on or about August 21, 2006, Matskina ceded true beneficial ownership and control over the professional corporation to the Management Defendants, like she had with Bay Needle. In reality, Matskina never was anything more than a de facto employee of the Management Defendants and she never provided services through Healthy Way.

124. In addition to controlling the operations of the professional corporation, the Management Defendants supervised and controlled the treatment and billing protocols for Healthy Way. For example, it was standard protocol for Healthy Way to bill Liberty Mutual for 45-60 minutes of treatment, per patient, per day, knowing very well that no patient received 45-60 minutes of treatment. Further, the Management Defendants would require Healthy Way to provide insurers, including Liberty Mutual, with fraudulent boilerplate initial examination reports that contained identical sections as reports from other PC Defendants. See Exhibit "26."

125. Beginning with Healthy Way, the Management Defendants effectuated a new scheme to fraudulently bill Liberty Mutual and other insurers. The Management Defendants caused Healthy Way to begin to fraudulently unbundle charges for acupuncture services. As discussed previously, this unbundling of charges (effectively causing Liberty Mutual to be billed

twice for the same services) led to increased profits, which allowed the Management Defendants to siphon off more money than they had previously.

126.    The February 2012 Indictment, supplemented by the United States Attorney's October 26, 2012 list of fraudulently incorporated professional corporations, alleges that Healthy Way was illegally owned and controlled by Anikeyev and used as a vehicle to submit large-scale fraudulent no-fault billing to automobile insurers for medically unnecessary treatments and treatments that never were provided in the first instance. See Exhibits "21-22."

**F.    The Fraudulent Incorporation and Operation of VS**

127.    The Defendants' fraudulent scheme continued in 2006, when they fraudulently incorporated VS as a vehicle through which they could unlawfully own and control. The Management Defendants again recruited O. Lendel who was willing to "sell" her acupuncture license to them so that they could fraudulently incorporate VS and use it to submit large-scale fraudulent billing to insurers.

128.    In exchange for a designated salary or other form of compensation, O. Lendel agreed to falsely represent in the certificate of incorporation filed with the Department of Education, and the biennial statements filed thereafter, that she is the true shareholder, director and officer of VS and that she truly owns, controls and practices through the professional corporation.

129.    Once VS was fraudulently incorporated on or about October 18, 2006, O. Lendel ceded true beneficial ownership and control over the professional corporation to the Management Defendants.    In reality, O. Lendel never has been anything more than a de facto employee of the Management Defendants and VS.  O. Lendel did not practice acupuncture or provide any services through the professional corporation.

130.   In addition to controlling the operations of the professional corporation, the Management Defendants supervised and controlled the treatment and billing protocols for Okslen.  For example, it was standard protocol for VS to bill Liberty Mutual for 45-60 minutes of treatment, per patient, per day, knowing very well that no patient received 45-60 minutes of treatment.   Further, the Management Defendants would require VS to provide insurers, including Liberty Mutual, with fraudulent boilerplate initial examination reports that contained identical sections as reports from other PC Defendants.  See Exhibit "26."

131.   In addition, the Management Defendants continued to cause VS to submit bills to Liberty Mutual where the services allegedly provided were unbundled causing Liberty Mutual to be billed twice for the same services.

132.   In fact, one of the treating acupuncturists who rendered services at VS based on bills submitted to Liberty Mutual, when advised that billing was submitted by VS for services she allegedly rendered, stated that she did not even know of or had any connection to VS (or any other No-Fault acupuncture provider).  She had never worked at the location that was listed on the billing submitted to Liberty Mutual and advised that she did not provide the services that were listed on bills shown to her.

133.   The February 2012 Indictment, supplemented by the United States Attorney's October 26, 2012 list of fraudulently incorporated professional corporations, alleges that VS was illegally owned and controlled by Anikeyev and used as a vehicle to submit large-scale fraudulent no-fault billing to automobile insurers for medically unnecessary treatments and treatments that never were provided in the first instance.  See Exhibits "21-22."

134.   As noted above, Anikeyev consented to forfeiture of all funds seized by the Government from the bank account of VS, as proceeds traceable to the commission of his admitted crime, as part of his guilty plea.

### G.  The Fraudulent Incorporation and Operation of Alpha

135.  The series of schemes continued with the incorporation of Alpha, in or about 2006, when the Management Defendants again convinced Kolomiytseva to again "sell" her acupuncture license to them, like they had with the others, so that they could fraudulently incorporate Alpha and use it to submit large-scale fraudulent billing to insurers.

136.  In order to circumvent New York law and to induce the State Education Department to issue a certificate of authority authorizing Alpha to operate an acupuncture practice, the Management Defendants again entered into a similar secret scheme with Kolomiytseva, as they had with Karina K.  In exchange for a designated salary or other form of compensation, in November 2006, Kolomiytseva agreed to falsely represent in the certificate of incorporation filed with the Department of Education, and the biennial statements filed thereafter, that she is the true shareholder, director and officer of Alpha and that she truly owns, controls and practices through the professional corporation.

137.  Once Alpha was fraudulently incorporated on or about November 22, 2006, Kolomiytseva ceded true beneficial ownership and control over the professional corporation to the Management Defendants.  In reality, like with Karina K, Kolomiytseva never has been anything more than a de facto employee of the Management Defendants and Alpha, occasionally providing acupuncture treatments through the professional corporation.

138.  In addition to controlling the operations of the professional corporation, the Management Defendants supervised and controlled the treatment and billing protocols for Alpha. For example, it was standard protocol for Alpha to bill Liberty Mutual for 45-60 minutes of treatment, per patient, per day, knowing very well that no patient received 45-60 minutes of treatment.  Further, the Management Defendants would require Alpha to provide insurers,

including Liberty Mutual, with fraudulent boilerplate initial examination reports that contained identical sections as reports from other PC Defendants. See Exhibit "26."

139.    The February 2012 Indictment, supplemented by the United States Attorney's October 26, 2012 list of fraudulently incorporated professional corporations, avers that Alpha was illegally owned and controlled by Anikeyev and used as a vehicle to submit large-scale fraudulent no-fault billing to automobile insurers for medically unnecessary treatments and treatments that never were provided in the first instance. See Exhibits "21-22."

**H.    The Fraudulent Incorporation and Operation of Lotus**

140.    The series of schemes continued with the incorporation of Lotus, in or about 2007, when the Management Defendants again convinced Kornilova to essentially "sell" her acupuncture license so that they could fraudulently incorporate Lotus and use it to submit large-scale fraudulent billing to insurers.

141.    In order to circumvent New York law and to induce the State Education Department to issue a certificate of authority authorizing Lotus to operate an acupuncture practice, the Management Defendants again entered into a similar secret scheme with Kornilova. In exchange for a designated salary or other form of compensation, in January 2007, Kornilova agreed to falsely represent in the certificate of incorporation filed with the Department of Education, and the biennial statements filed thereafter, that she is the true shareholder, director and officer of Lotus and that she truly owns, controls and practices through the professional corporation.

142.    Once Lotus was fraudulently incorporated on or about January 26, 2007, Kornilova ceded true beneficial ownership and control over the professional corporation to the Management Defendants. In reality, Kornilova never has been anything more than a de facto

employee of the Management Defendants and Lotus, as she never provides acupuncture services through the professional corporation.

143. In addition to controlling the operations of the professional corporation, the Management Defendants supervised and controlled the treatment and billing protocols for Lotus. For example, it was standard protocol for Lotus to bill Liberty Mutual for 45-60 minutes of treatment, per patient, per day, knowing very well that no patient received 45-60 minutes of treatment. Further, the Management Defendants would require Lotus to provide insurers, including Liberty Mutual, with fraudulent boilerplate initial examination reports that contained identical sections as reports from other PC Defendants. See Exhibit "26."

144. Like with Healthy Way and VS, the Management Defendants continued to cause Lotus to submit bills to Liberty Mutual where the services allegedly provided were fraudulently unbundled causing Liberty Mutual to be billed twice for the same services.

145. The February 2012 Indictment, supplemented by the United States Attorney's October 26, 2012 list of fraudulently incorporated professional corporations, alleges that Lotus was illegally owned and controlled by Anikeyev and used as a vehicle to submit large-scale fraudulent no-fault billing to automobile insurers for medically unnecessary treatments and treatments that never were provided in the first instance. See Exhibits "21-22."

**I.     The Fraudulent Incorporation and Operation of Sunrise**

146. The series of schemes continued with the incorporation of Sunrise, in or about 2007, when the Management Defendants convinced Tsukanov to essentially "sell" his acupuncture license to them so that they could fraudulently incorporate Sunrise and use it to submit large-scale fraudulent billing to insurers.

147. In order to circumvent New York law and to induce the State Education Department to issue a certificate of authority authorizing Sunrise to operate an acupuncture

39

practice, the Management Defendants again entered into a similar secret scheme with Tsukanov. In exchange for a designated salary or other form of compensation, in October 2007, Tsukanov agreed to falsely represent in the certificate of incorporation filed with the Department of Education, and the biennial statements filed thereafter, that he is the true shareholder, director and officer of Sunrise and that he truly owns, controls and practices through the professional corporation.

148. Once Sunrise was fraudulently incorporated on or about October 25, 2007, Tsukanov ceded true beneficial ownership and control over the professional corporation to the Management Defendants. In reality, Tsukanov never has been anything more than a de facto employee of the Management Defendants and Sunrise, as he never provided services through the professional corporation.

149. In addition to controlling the operations of the professional corporation, the Management Defendants supervised and controlled the treatment and billing protocols for Sunrise. For example, it was standard protocol for Sunrise to bill Liberty Mutual for 45-60 minutes of treatment, per patient, per day, knowing very well that no patient received 45-60 minutes of treatment. Further, the Management Defendants would require Sunrise to provide insurers, including Liberty Mutual, with fraudulent boilerplate initial examination reports that contained identical sections as reports from other PC Defendants. See Exhibit "26."

150. Like with Healthy Way, VS and other PCs, the Management Defendants continued to cause Sunrise to submit bills to Liberty Mutual where the services allegedly provided were unbundled causing Liberty Mutual to be billed twice for the same services.

151. The February 2012 Indictment, supplemented by the United States Attorney's October 26, 2012 list of fraudulently incorporated professional corporations, alleges that Sunrise was illegally owned and controlled by Anikeyev and used as a vehicle to submit large-scale

fraudulent no-fault billing to automobile insurers for medically unnecessary treatments and treatments that never were provided in the first instance. See Exhibits "21-22."

**J.      The Fraudulent Incorporation and Operation of Easy Care**

152.    The Management Defendants furthered their fraudulent scheme with the incorporation of Easy Care, in about 2008, when the Management Defendants convinced Kulagina to essentially "sell" her acupuncture license to them so that they could fraudulently incorporate Easy Care and use it to submit large-scale fraudulent billing to insurers. In fact, the Management Defendants were becoming so brazen in their scheme that the Department of State lists Osipov of the CEO of Easy Care.

153.    In order to circumvent New York law and to induce the State Education Department to issue a certificate of authority authorizing Easy Care to operate an acupuncture practice, the Management Defendants again entered into a similar secret scheme with Kulagina. In exchange for a designated salary or other form of compensation, in February 2008, Kulagina agreed to falsely represent in the certificate of incorporation filed with the Department of Education, and the biennial statements filed thereafter, that she is the true shareholder, director and officer of Easy Care and that she truly owns, controls and practices through the professional corporation.

154.    Once Easy Care was fraudulently incorporated on or about February 13, 2008, Kulagina ceded true beneficial ownership and control over the professional corporation to the Management Defendants. In reality, Kulagina never has been anything more than a de facto employee of the Management Defendants and Easy Care.

155.    In addition to controlling the operations of the professional corporation, the Management Defendants supervised and controlled the treatment and billing protocols for Easy Care. For example, it was standard protocol for Easy Care to bill Liberty Mutual for 45-60

minutes of treatment, per patient, per day, knowing very well that no patient received 45-60 minutes of treatment. Further, the Management Defendants would require Easy Care to provide insurers, including Liberty Mutual, with fraudulent boilerplate initial examination reports that contained identical sections as reports from other PC Defendants. See Exhibit "26."

156. Like with other PC Defendants, the Management Defendants continued to cause Easy Care to submit bills to Liberty Mutual where the services allegedly provided were fraudulently unbundled causing Liberty Mutual to be billed twice for the same services.

157. The February 2012 Indictment, supplemented by the United States Attorney's October 26, 2012 list of fraudulently incorporated professional corporations, alleges that Easy Care was illegally owned and controlled by Anikeyev and used as a vehicle to submit large-scale fraudulent no-fault billing to automobile insurers for medically unnecessary treatments and treatments that never were provided in the first instance. See Exhibits "21-22."

### K. The Fraudulent Incorporation and Operation of Shirom

158. The Management Defendants continued their fraudulent scheme with the incorporation of Shirom, in or about 2008, when the Management Defendants convinced Shimunov to essentially "sell" his acupuncture license to them so that they could fraudulently incorporate Shirom and use it to submit large-scale fraudulent billing to insurers.

159. In order to circumvent New York law and to induce the State Education Department to issue a certificate of authority authorizing Shirom to operate an acupuncture practice, the Management Defendants again entered into a similar secret scheme with Shimunov. In exchange for a designated salary or other form of compensation in April, 2008, Shimunov agreed to falsely represent in the certificate of incorporation filed with the Department of Education, and the biennial statements filed thereafter, that he is the true shareholder, director

42

and officer of Shirom and that he truly owns, controls and practices through the professional corporation.

160.   Once Shirom was fraudulently incorporated on or about April 15, 2008, Shimunov ceded true beneficial ownership and control over the professional corporation to the Management Defendants.  In reality, Shimunov never has been anything more than a de facto employee of the Management Defendants and Shirom.

161.   In addition to controlling the operations of the professional corporation, the Management Defendants supervised and controlled the treatment and billing protocols for Shirom.  For example, it was standard protocol for Shirom to bill Liberty Mutual for 45-60 minutes of treatment, per patient, per day, knowing very well that no patient received 45-60 minutes of treatment.   Further, the Management Defendants would require Shirom to provide insurers, including Liberty Mutual, with fraudulent boilerplate initial examination reports that contained identical sections as reports from other PC Defendants.  See Exhibit "26."

162.   Like with other PC Defendants, the Management Defendants continued to cause Shirom to submit bills to Liberty Mutual where the services allegedly provided were fraudulently unbundled, causing Liberty Mutual to be billed twice for the same services.

163.   The February 2012 Indictment, supplemented by the United States Attorney's October 26, 2012 list of fraudulently incorporated professional corporations, alleges that Shirom was illegally owned and controlled by Anikeyev and used as a vehicle to submit large-scale fraudulent no-fault billing to automobile insurers for medically unnecessary treatments and treatments that never were provided in the first instance.  See Exhibits "21-22."

**L.   The Fraudulent Incorporation and Operation of Urban Well**

164.   The Management Defendants, not content with the incorporation of the first ten PC Defendants, continued their fraudulent scheme with the incorporation of Urban Well, only a

month after the incorporation of Shirom, in or about 2008. The Management Defendants convinced Abitbol to essentially "sell" her acupuncture license to them so that they could fraudulently incorporate Urban Well and use it to submit large-scale fraudulent billing to insurers.

165.   In order to circumvent New York law and to induce the State Education Department to issue a certificate of authority authorizing Urban Well to operate an acupuncture practice, the Management Defendants again entered into a similar secret scheme with Abitbol. In exchange for a designated salary or other form of compensation, in May 2008, Abitbol agreed to falsely represent in the certificate of incorporation filed with the Department of Education, and the biennial statements filed thereafter, that she is the true shareholder, director and officer of Urban Well and that she truly owns, controls and practices through the professional corporation.

166.   Once Urban Well was fraudulently incorporated on or about May 21, 2008, Abitbol ceded true beneficial ownership and control over the professional corporation to the Management Defendants.  In reality, Abitbol never has been anything more than a de facto employee of the Management Defendants and Urban Well.

167.   In addition to controlling the operations of the professional corporation, the Management Defendants supervised and controlled the treatment and billing protocols for Urban Well.  For example, it was standard protocol for Urban Well to bill Liberty Mutual for 45-60 minutes of treatment, per patient, per day, knowing very well that no patient received 45-60 minutes of treatment.   Further, the Management Defendants would require Urban Well to provide insurers, including Liberty Mutual, with fraudulent boilerplate initial examination reports that contained identical sections as reports from other PC Defendants. See Exhibit "26."

168.   The February 2012 Indictment, supplemented by the United States Attorney's October 26, 2012 list of fraudulently incorporated professional corporations, alleges that Urban

Well was illegally owned and controlled by Anikeyev and used as a vehicle to submit large-scale fraudulent no-fault billing to automobile insurers for medically unnecessary treatments and treatments that never were provided in the first instance. See Exhibits "21-22."

**M.     The Fraudulent Incorporation and Operation of Approach**

169.     The Management Defendants continued their fraudulent scheme with the incorporation of Approach, only a month after the incorporation of Urban Well, in or about 2008. The Management Defendants convinced Zapolsky to essentially "sell" his acupuncture license to them so that they could fraudulently incorporate Approach and use it to submit large-scale fraudulent billing to insurers.

170.     In order to circumvent New York law and to induce the State Education Department to issue a certificate of authority authorizing Approach to operate an acupuncture practice, the Management Defendants again entered into a similar secret scheme with Zapolsky. In exchange for a designated salary or other form of compensation, in December 2008, Zapolsky agreed to falsely represent in the certificate of incorporation filed with the Department of Education, and the biennial statements filed thereafter, that he is the true shareholder, director and officer of Approach and that he truly owns, controls and practices through the professional corporation.

171.     Once Approach was fraudulently incorporated on or about December 26, 2008, Zapolsky ceded true beneficial ownership and control over the professional corporation to the Management Defendants. In reality, Zapolsky never has been anything more than a de facto employee of the Management Defendants and Approach.

172.     In addition to controlling the operations of the professional corporation, the Management Defendants supervised and controlled the treatment and billing protocols for Approach. For example, it was standard protocol for Approach to bill Liberty Mutual for 45-60

minutes of treatment, per patient, per day, knowing very well that no patient received 45-60 minutes of treatment. Further, the Management Defendants would require Approach to provide insurers, including Liberty Mutual, with fraudulent boilerplate initial examination reports that contained identical sections as reports from other PC Defendants. See Exhibit "26."

173. The February 2012 Indictment, supplemented by the United States Attorney's October 26, 2012 list of fraudulently incorporated professional corporations, alleges that Approach was illegally owned and controlled by Anikeyev and used as a vehicle to submit large-scale fraudulent no-fault billing to automobile insurers for medically unnecessary treatments and treatments that never were provided in the first instance. See Exhibits "21-22."

**N.     The Fraudulent Incorporation and Operation of SML**

174. The Management Defendants continued their fraudulent scheme with the incorporation of SML in or about 2009. The Management Defendants, again, utilizing Kulagina, convinced her to essentially "sell" her acupuncture license to them so that they could fraudulently incorporate SML and use it to submit large-scale fraudulent billing to insurers, like she had with Easy Care.

175. In order to circumvent New York law and to induce the State Education Department to issue a certificate of authority authorizing SML to operate an acupuncture practice, the Management Defendants again entered into a similar secret scheme with Kulagina. In exchange for a designated salary or other form of compensation, in May 2009, Kulagina agreed to falsely represent in the certificate of incorporation filed with the Department of Education, and the biennial statements filed thereafter, that she is the true shareholder, director and officer of SML and that she truly owns, controls and practices through the professional corporation.

176. Once SML was fraudulently incorporated on or about May 11, 2009, Kulagina, (once again) ceded true beneficial ownership and control over the professional corporation to the Management Defendants. In reality, Kulagina never has been anything more than a de facto employee of the Management Defendants and SML, as she only occasionally provided acupuncture treatments through the professional corporation.

177. In addition to controlling the operations of the professional corporation, the Management Defendants supervised and controlled the treatment and billing protocols for SML. In fact, one of the treating providers advised Liberty Mutual that billing for SML was completed by a billing company and a male Russian, named Andrey, who picked up the treatment notes and documents to complete the billing at an unknown location. This person is obviously Anikeyev, who would use his control over SML and the other PC Defendants to control the treatment and billing protocols in order to inflate the charges and derive economic benefit from the acupuncture services to which he was not entitled.

178. For example, it was standard protocol for SML to bill Liberty Mutual for 45-60 minutes of treatment, per patient, per day, knowing very well that no patient received 45-60 minutes of treatment. Further, the Management Defendants would require SML to provide insurers, including Liberty Mutual, with fraudulent boilerplate initial examination reports that contained identical sections as reports from other PC Defendants. See Exhibit "26."

179. Moreover, multiple acupuncturists who performed services under the SML name advised Liberty Mutual that there were not direct employees of SML, but were paid on a 1099 basis as independent contractors – which renders SML ineligible to receive reimbursement for any services performed by these individuals.

O.     The Fraudulent Incorporation and Operation of Bronx Therapy

180. The Management Defendants continued their fraudulent scheme with the incorporation of Bronx Therapy in or about 2009. The Management Defendants, again convinced Shimunov, to essentially "sell" his acupuncture license to them so that they could fraudulently incorporate Bronx Therapy and use it to submit large-scale fraudulent billing to insurers, like he had with Shirom.

181. In order to circumvent New York law and to induce the State Education Department to issue a certificate of authority authorizing Bronx Therapy to operate an acupuncture practice, the Management Defendants again entered into a similar secret scheme with Shimunov. In exchange for a designated salary or other form of compensation, in December, 2009, Shimunov agreed to falsely represent in the certificate of incorporation filed with the Department of Education, and the biennial statements filed thereafter, that he is the true shareholder, director and officer of Bronx Therapy and that he truly owns, controls and practices through the professional corporation.

182. Once Bronx Therapy was fraudulently incorporated on or about December 4, 2009, Shimunov, (once again) ceded true beneficial ownership and control over the professional corporation to the Management Defendants. In reality, Shimunov never has been anything more than a de facto employee of the Management Defendants and Bronx Therapy, as he only occasionally provided acupuncture treatments through the professional corporation.

183. In addition to controlling the operations of the professional corporation, the Management Defendants supervised and controlled the treatment and billing protocols for Bronx Therapy. For example, it was standard protocol for Bronx Therapy to bill Liberty Mutual for 45-60 minutes of treatment, per patient, per day, knowing very well that no patient received 45-60 minutes of treatment. Further, the Management Defendants would require Bronx Therapy to

provide insurers, including Liberty Mutual, with fraudulent boilerplate initial examination reports that contained identical sections as reports from other PC Defendants. See Exhibit "26."

184. The February 2012 Indictment, supplemented by the United States Attorney's October 26, 2012 list of fraudulently incorporated professional corporations, avers that Bronx Therapy was illegally owned and controlled by Anikeyev and used as a vehicle to submit large-scale fraudulent no-fault billing to automobile insurers for medically unnecessary treatments and treatments that never were provided in the first instance. See Exhibits "21-22."

**P.     The Fraudulent Incorporation and Operation of TC**

185. The Management Defendants continued their fraudulent scheme with the incorporation of TC in or about 2010. The Management Defendants convinced Shkapenyuk (whom they were familiar with as he rendered acupuncture services at one of the other PCs), to essentially "sell" his acupuncture license to them so that they could fraudulently incorporate TC and use it to submit large-scale fraudulent billing to insurers.

186. In exchange for a designated salary or other form of compensation, Shkapenyuk agreed to falsely represent in the certificate of incorporation filed with the Department of Education, and the biennial statements filed thereafter, that he is the true shareholder, director and officer of TC and that he truly owns, controls and practices through the professional corporation.

187. Once TC was fraudulently incorporated on or about June 24, 2010, Shkapenyuk ceded true beneficial ownership and control over the professional corporation to the Management Defendants. In reality, Shkapenyuk never has been anything more than a de facto employee of the Management Defendants and TC, as he only occasionally provided acupuncture treatments through the professional corporation.

188.    In addition to controlling the operations of the professional corporation, the Management Defendants supervised and controlled the treatment and billing protocols for TC. For example, it was standard protocol for TC to bill Liberty Mutual for 45-60 minutes of treatment, per patient, per day, knowing very well that no patient received 45-60 minutes of treatment. Further, the Management Defendants would require TC to provide insurers, including Liberty Mutual, with fraudulent boilerplate initial examination reports that contained identical sections as reports from other PC Defendants. See Exhibit "26."

189.    In addition, the Management Defendants, as they had done with other PC Defendants caused TC to submit bills to Liberty Mutual where the services allegedly provided were unbundled causing Liberty Mutual to be billed twice for the same services.

190.    It is clear that the Management Defendants perform all of the hiring and supervision of acupuncture and non-acupuncture personnel at TC. The treating acupuncturists were not paid as employees of TC, but were paid on a 1099 Independent Contractor basis.

191.    In fact, one of the treating acupuncturists who rendered services at TC, admitted she was paid as an independent contractor, who worked with an "Igor," but she could not recall his last name. She also admitted that "Andrey" was working in a back office of the medical clinic form which TC rendered services.

192.    The February 2012 Indictment, supplemented by the United States Attorney's October 26, 2012 list of fraudulently incorporated professional corporations, alleges that TC was illegally owned and controlled by Anikeyev and used as a vehicle to submit large-scale fraudulent no-fault billing to automobile insurers for medically unnecessary treatments and treatments that never were provided in the first instance. See Exhibits "21-22."

193. As noted above, Anikeyev consented to forfeiture of all funds seized by the Government from the bank account of TC, as proceeds traceable to the commission of his admitted crime, as part of his guilty plea..

**Q.    The Fraudulent Incorporation and Operation of Acuhealth**

194. The Management Defendants continued their fraudulent scheme with the incorporation of Acuhealth on the same day as TC in 2010. The Management Defendants convinced Kornilova, to essentially "sell" her acupuncture license to them so that they could fraudulently incorporate Acuhealth and use it to submit large-scale fraudulent billing to insurers. Kornilova was no stranger to this type of arrangement, as she had previously allowed the Management Defendants to incorporate another PC using her license.

195. In exchange for a designated salary or other form of compensation, Kornilova agreed to falsely represent in the certificate of incorporation filed with the Department of Education, and the biennial statements filed thereafter, that she is the true shareholder, director and officer of Acuhealth and that she truly owns, controls and practices through the professional corporation.

196. Once Acuhealth was fraudulently incorporated on or about June 24, 2010, Kornilova ceded true beneficial ownership and control over the professional corporation to the Management Defendants. In reality, Kornilova never has been anything more than a de facto employee of the Management Defendants and Acuhealth, as she only occasionally provided acupuncture treatments through the professional corporation.

197. In addition to controlling the operations of the professional corporation, the Management Defendants supervised and controlled the treatment and billing protocols for Acuhealth. For example, it was standard protocol for Acuhealth to bill Liberty Mutual for 45-60 minutes of treatment, per patient, per day, knowing very well that no patient received 45-60

minutes of treatment. Further, the Management Defendants would require Acuhealth to provide insurers, including Liberty Mutual, with fraudulent boilerplate initial examination reports that contained identical sections as reports from other PC Defendants. See Exhibit "26."

198. It is clear that the Management Defendants perform all of the hiring and supervision of acupuncture and non-acupuncture personnel at Acuhealth. The treating acupuncturists were not paid as employees of Acuhealth, but were paid on a 1099 Independent Contractor basis.

199. The February 2012 Indictment, supplemented by the United States Attorney's October 26, 2012 list of fraudulently incorporated professional corporations, alleges that Acuhealth was illegally owned and controlled by Anikeyev and used as a vehicle to submit large-scale fraudulent no-fault billing to automobile insurers for medically unnecessary treatments and treatments that never were provided in the first instance. See Exhibits "21-22."

200. As noted above, Anikeyev consented to forfeiture of all funds seized by the Government from the bank account of Acuhealth, as proceeds traceable to the commission of his admitted crime, as part of his guilty plea.

## R. The Fraudulent Incorporation and Operation of NR

201. The Management Defendants continued their fraudulent scheme well into 2010, with the incorporation of NR in or about 2010. The Management Defendants convinced Razzakova, to essentially "sell" her acupuncture license to them so that they could fraudulently incorporate NR and use it to submit large-scale fraudulent billing to insurers.

202. In order to circumvent New York law and to induce the State Education Department to issue a certificate of authority authorizing NR to operate an acupuncture practice, the Management Defendants entered into a similar secret scheme with Razzakova. In exchange for a designated salary or other form of compensation, in October 2010, Razzakova agreed to

falsely represent in the certificate of incorporation filed with the Department of Education, and the biennial statements filed thereafter, that she is the true shareholder, director and officer of NR and that she truly owns, controls and practices through the professional corporation.

203. Once NR was fraudulently incorporated on or about October 4, 2010, Razzakova ceded true beneficial ownership and control over the professional corporation to the Management Defendants. In reality, Razzakova never has been anything more than a de facto employee of the Management Defendants and NR, as she only occasionally provided acupuncture treatments through the professional corporation.

204. In addition to controlling the operations of the professional corporation, the Management Defendants supervised and controlled the treatment and billing protocols for NR. For example, it was standard protocol for NR to bill Liberty Mutual for 45-60 minutes of treatment, per patient, per day, knowing very well that no patient received 45-60 minutes of treatment.

205. Further, the Management Defendants would require NR to provide insurers, including Liberty Mutual, with fraudulent boilerplate initial examination reports that contained identical sections as reports from other PC Defendants. See Exhibit "26."

206. The February 2012 Indictment, supplemented by the United States Attorney's October 26, 2012 list of fraudulently incorporated professional corporations, alleges that NR was illegally owned and controlled by Anikeyev and used as a vehicle to submit large-scale fraudulent no-fault billing to automobile insurers for medically unnecessary treatments and treatments that never were provided in the first instance. See Exhibits "21-22."

## S. The Fraudulent Incorporation and Operation of Silver Lotus

207. The Management Defendants continued their fraudulent scheme well into 2010, with the incorporation of Silver Lotus, only a few months after NR, in or about 2010. The

Management Defendants convinced Tsukanov, like they had when they incorporated Sunrise, to essentially "sell" his acupuncture license to them so that they could fraudulently incorporate Silver Lotus and use it to submit large-scale fraudulent billing to insurers.

208. In order to circumvent New York law and to induce the State Education Department to issue a certificate of authority authorizing Silver Lotus to operate an acupuncture practice, the Management Defendants again, entered into a similar secret scheme with Tsukanov. In exchange for a designated salary or other form of compensation, in December 2010, Tsukanov agreed to falsely represent in the certificate of incorporation filed with the Department of Education, and the biennial statements filed thereafter, that he is the true shareholder, director and officer of Silver Lotus and that he truly owns, controls and practices through the professional corporation.

209. Once Silver Lotus was fraudulently incorporated on or about December 2, 2010, Tsukanov ceded true beneficial ownership and control over the professional corporation to the Management Defendants. In reality, Tsukanov never has been anything more than a de facto employee of the Management Defendants and Silver Lotus, as he does not even provide services through the professional corporation.

210. In addition to controlling the operations of the professional corporation, the Management Defendants supervised and controlled the treatment and billing protocols for Silver Lotus. For example, it was standard protocol for Silver Lotus to bill Liberty Mutual for 45-60 minutes of treatment, per patient, per day, knowing very well that no patient received 45-60 minutes of treatment. Further, the Management Defendants would require Silver Lotus to provide insurers, including Liberty Mutual, with fraudulent boilerplate initial examination reports that contained identical sections as reports from other PC Defendants. See Exhibit "26."

211. The February 2012 Indictment, supplemented by the United States Attorney's October 26, 2012 list of fraudulently incorporated professional corporations, avers that Silver Lotus was illegally owned and controlled by Anikeyev and used as a vehicle to submit large-scale fraudulent no-fault billing to automobile insurers for medically unnecessary treatments and treatments that never were provided in the first instance. See Exhibits "21-22."

**T.    The Fraudulent Incorporation and Operation of New Century**

212. The Management Defendants continued their fraudulent scheme well into 2010, with the incorporation of New Century, shortly after it had incorporated numerous other PC Defendants. The Management Defendants convinced Kondranina to essentially "sell" her acupuncture license to them so that they could fraudulently incorporate New Century and use it to submit large-scale fraudulent billing to insurers.

213. In exchange for a designated salary or other form of compensation, Kondranina (whom they were familiar with as she rendered acupuncture services at one of the other PCs), agreed to falsely represent in the certificate of incorporation filed with the Department of Education, and the biennial statements filed thereafter, that she is the true shareholder, director and officer of New Century and that she truly owns, controls and practices through the professional corporation.

214. Once New Century was fraudulently incorporated in or about December, 2010, Kondranina ceded true beneficial ownership and control over the professional corporation to the Management Defendants.

215. In addition to controlling the operations of the professional corporation, the Management Defendants supervised and controlled the treatment and billing protocols for New Century. For example, it was standard protocol for New Century to bill Liberty Mutual for 45-60 minutes of treatment, per patient, per day, knowing very well that no patient received 45-60

minutes of treatment. Further, the Management Defendants would require New Century to provide insurers, including Liberty Mutual, with fraudulent boilerplate initial examination reports that contained identical sections as reports from other PC Defendants. See Exhibit "26."

216. In fact, Kondranina admitted that New Century was set up by Anikeyev and it was Anikeyev and his company that operated and controlled New Century. She further stated that Anikeyev controlled numerous PCs and would make the arrangements with medical clinics to provide acupuncture. Kondranina stated that she was paid on a 1099 basis through Anikeyev's company.

217. It is clear that the Management Defendants perform all of the hiring and supervision of acupuncture and non-acupuncture personnel at New Century. The treating acupuncturists were not paid as employees of New Century, but were paid on a 1099 Independent Contractor basis.

218. The February 2012 Indictment, supplemented by the United States Attorney's October 26, 2012 list of fraudulently incorporated professional corporations, avers that New Century was illegally owned and controlled by Anikeyev and used as a vehicle to submit large-scale fraudulent no-fault billing to automobile insurers for medically unnecessary treatments and treatments that never were provided in the first instance. See Exhibits "21-22."

219. As with numerous other PC Defendants, one of the treating acupuncturists who rendered services at New Century based on bills submitted to Liberty Mutual, when advised that billing was submitted by New Century for services she allegedly rendered, admitted she did not even know of or had any connection to New Century. She had never rendered services for no-fault patients on behalf of New Century.

220. As noted above, Anikeyev consented to forfeiture of all funds seized by the Government from the bank account of New Century, as proceeds traceable to the commission of his admitted crime, as part of his guilty plea.

## IV. The Defendants' Fraudulent Treatment and Billing Protocol

221. In furtherance of the Defendants' fraudulent scheme, every Insured who was referred to one of the PC Defendants was subjected to acupuncture treatments that were provided – to the extent that they were provided at all – pursuant to a pre-determined, fraudulent protocol. Rather, Anikeyev and the Management Defendants created this pre-determined, fraudulent protocol to inflate the billing and maximize the profits of the PC Defendants. Specifically:

### A. The Phony Acupuncture "Treatments" Provided Through the PC Defendants

222. Acupuncture is predicated upon the theory that there are twelve main meridians ("the Meridians") in the human body through which energy flows. Every individual has a unique energy flow ("Chi"), or more particularly unique patterns of underlying strengths and weaknesses in the flow of Chi that are impacted differently from trauma. When an individual's unique Chi becomes disrupted or imbalanced for any reason (such as trauma), needles can be inserted or pressure can be applied to very specific points ("Acupuncture Points") along the Meridians to remove the disruption or imbalance and restore the patient's unique Chi.

223. The goal of any legitimate acupuncture treatment is to effectively treat and benefit the patient by restoring his or her unique Chi, relieving his or her symptoms, and returning him or her to normal activity. Since every individual has unique Chi, acupuncture treatment should be individualized. In fact, the differences in each individual's unique patterns of underlying strengths and weaknesses in the flow of Chi should be reflected in different treatment strategies.

224. Moreover, any legitimate acupuncture treatment requires a continuous assessment of the patient's condition and energy flow, as well as the therapeutic effect of previous treatments. Therefore, adjustments in treatment should be made as treatment progresses over time in order to improve the therapeutic effectiveness of each treatment, and eventually to return the patient to maximum health.

225. Any legitimate acupuncture treatment also requires meaningful, genuine, and individualized documentation of the: (i) physical examination; (ii) diagnosis; (iii) treatment plan; (iv) results of each session; and (v) the patient's progress throughout the course of treatment.

226. The purported "acupuncture" services provided by the PC Defendants do not remotely comport with any of the aforesaid basic, legitimate acupuncture requirements. All patients were treated with repetitive and virtually identical point prescriptions, without regard to any necessary individual treatment strategies, without regard to any necessary adjustments in treatment as treatment progresses over time, and without meaningful, genuine, and individualized documentation.

227. At best, the purported "acupuncture" services provided by the PC Defendants consisted of inserting needles into Insureds in an assembly-line fashion that bore little, if any, relation to the Insured's condition and were not designed to effectively treat or otherwise benefit the Insureds.

228. The services billed for by the PC Defendants also reflect a lack of independent professional acupuncture judgment and instead reflect a predetermined protocol designed to enrich the Defendants through the submission of fraudulent charges to Liberty Mutual and other insurers.

229. For instance, the number of needles used were often insufficient; the number and location of acupuncture points used were insufficient to justify the number of units billed;

patients were universally getting a very high frequency of treatment (sessions 3-4 per week, for months) that was not supported by the alleged injuries and not adjusted to reflect the Insureds' improvement or lack thereof;

230. The Defendants' cookie-cutter approach to the acupuncture treatments that they performed, or cause to be performed, on virtually every Insured was designed solely to maximize the charges that they could submit through the PC Defendants to Liberty Mutual and other insurers, and to maximize their ill-gotten profits.

**B.     The Fraudulent Billing Through the PC Defendants**

231. As Anikeyev admitted during his allocution, not only did the Defendants submit billing, or cause it to be submitted, for cookie-cutter acupuncture treatments that were provided without regard to actual medical necessity, they also misrepresented the nature and extent of the treatments that actually were provided in the billing that they submitted, or caused to be submitted, to Liberty Mutual. These misrepresentations, spanning over all of the PC Defendants that purported to be separately owned, were plainly part of the pre-determined, fraudulent billing protocol imposed by Anikeyev and the Management Defendants.

232. For each of the PC Defendants, the Defendants routinely inflated the charges to Liberty Mutual by billing for three to four units of treatment (or sometimes more), purportedly consisting of at least 45 minutes of personal, one on one contact, per Insured per day, along with bogus charges for "adjunct" acupuncture procedures.

233. The purported acupuncture treatment described in the treating acupuncturist's notes in almost all cases fails to justify the billing submitted by the PC Defendants for multiple units of personal, one-on-one contact, lasting a minimum of 45 minutes.

234. Defendants' fraudulent billing scheme misrepresented and exaggerated the level of services provided in order to inflate the charges submitted to Liberty Mutual. Specifically, the

PC Defendants uniformly submitted billing to Liberty Mutual for multiple segments of purported one-on-one contact rendered on the same day for each Insured, under both billing code 97810 and 97811, notwithstanding the fact that the "treatments" allegedly rendered by the PC Defendants were (or could have been) rendered in one treatment segment.[1]

235. According to the New York Workers' Compensation Fee Schedule (the "Fee Schedule"), which is applicable to claims for No-Fault Benefits, billing code 97810 is used to charge for an Insured's initial 15 minutes of personal, one-on-one contact with an acupuncturist on any given day where the acupuncture services are performed without electrical stimulation.

236. Pursuant to the Fee Schedule, only <u>one charge</u> under billing code 97810 can be submitted for a single patient on a single day, regardless of the number of needles that are inserted into the patient or the number of body parts into which the needles are inserted. As the American Medical Association ("AMA") has noted:

> [O]nly one initial acupuncture code [i.e., billing code 97810] is reported per date of service as these services include both the treatment, set-up, and evaluation necessary to identify the specific acupuncture service(s) necessary for the patient. Therefore, when reporting this service, only one initial code is reported per date of service to identify the complete initial service provided.

> For each additional increment of "personal one-on-one contact with the patient" performed, ... [billing code] 97811 ... is reported ... .

Relevant portions of the AMA's "Coding Communication: Update on Reporting Acupuncture Procedures" are annexed hereto as Exhibit "27."

237. Despite the prohibition on billing more than one 97810 code per day, numerous PC Defendants, at the direction of Anikeyev and the Management Defendants, submitted acupuncture bills with multiple charges for initial "treatments" allegedly provided to a single

---

[1] The only deviation appears to be when certain PC Defendants bill under codes 97813 and 97814. The only difference between these codes and 97810/97811 is the use of electric stimulation. Regardless of the codes used, the PC Defendants, almost universally will bill Liberty Mutual for treatments purportedly lasting a minimum of 45 minutes, per patient, per day.

Insured on a single day, fraudulently misrepresenting that two or more separate initial acupuncture treatments were actually provided to Insureds on a single day.

238.  In addition, the PC Defendants also billed for additional acupuncture treatment for virtually every single Insured each day under billing code 97811.  According to the Fee Schedule, billing code 97811 only can be used if: (i) a patient spends an initial 15 minutes of personal, one-on-one contact with the acupuncturist (which is billed under billing code 97810); (ii) the acupuncturist then removes the needles from the patient's body; (iii) the acupuncturist spends additional personal, one-on-one contact of up to 15 minutes with the patient; during which time (iv) the acupuncturist "re-inserts" needles into the patient's body.

239.  Because, for example, numerous PC Defendants fraudulently unbundled their charges under billing code 97810 into multiple charges of 97810 on a single day, and then used these multiple 97810 charges as the "basis" for multiple charges of 97811 on a single day, the Defendants typically submitted bills that include triple or quadruple the proper charges.

240.  The inflated charges billed as described above are over and above the other charges regularly submitted by the Defendant PCs to Liberty Mutual for initial and follow up evaluations, and charges for adjunct modalities, like moxibustion and infrared therapy.

241.  Through their fraudulent billing practices, the Defendants increased by a huge order of magnitude the charges that they submitted, or caused to be submitted, to Liberty Mutual and other insurers.

## V.  The PC Defendants' Fraudulent Billing for Independent Contractor Services

242.  The Defendants' fraudulent scheme also has included submission of claims to Liberty Mutual seeking payment for services performed by independent contractors. Under the No-Fault Laws, professional service corporations are ineligible to bill or receive payment for goods or

services provided by independent contractors – the healthcare services must be provided by the professional corporations themselves, *i.e.*, their owners or by the PC's direct employees.

243. Since 2001, the New York State Insurance Department consistently has reaffirmed its longstanding position that professional corporations are not entitled to receive reimbursement under the No-Fault Laws for healthcare providers performing services as independent contractors. See DOI Opinion Letter, February 21, 2001 ("where the health services are performed by a provider who is an independent contractor with the PC and is not an employee under the direct supervision of a PC owner, the PC is not authorized to bill under No-Fault as a licensed provider of those services"); DOI Opinion Letter, February 5, 2002 (refusing to modify position set forth in 2-11-01 Opinion letter despite a request from the New York State Medical Society); DOI Opinion Letter, March 11, 2002 ("If the physician has contracted with the PC as an independent contractor, and is not an employee or shareholder of the PC, such physician may not represent himself or herself as an employee of the PC eligible to bill for health services rendered on behalf of the PC, under the New York Comprehensive Motor Vehicle Insurance Reparations Act..."); DOI Opinion Letter, October 29, 2003 (extending the independent contractor rule to hospitals); DOI Opinion Letter, March 21, 2005 (DOI refused to modify its earlier opinions based upon interpretations of the Medicare statute issued by the CMS) (copies of the relevant DOI Opinion letters are annexed hereto as Exhibit "28").

244. Even so, the Defendants routinely submitted charges to Liberty Mutual and other insurers on behalf of the PC Defendants for acupuncture treatments performed by independent contractors.

245. As detailed above, various alleged owners of the PC Defendants and various treating acupuncturists of the PC Defendants have admitted to Liberty Mutual that they were paid by the Management Defendants as independent contractors on a 1099 basis for the services they

rendered for the PC Defendants. For example, Kondranina admitted that she was paid as an independent contractor by Anikeyev for the services she rendered on behalf of the PC she allegedly owned.

246.    Multiple treating acupuncturists admitted to Liberty Mutual that Anikeyev and his company would dictate where they would render treatment, but regardless of which PC they provided treatment for (including at the PC Defendants') they were paid on a 1099 basis, as independent contractors.

247.    In order to accomplish this, the Management Defendants:

(i)     paid the acupuncturists either in whole or in part, on a 1099 basis rather than a W-2 basis;

(ii)    established an understanding with the acupuncturists that they were independent contractors, rather than employees;

(iii)   paid no employee benefits to the acupuncturists;

(iv)    failed to secure and maintain W-4 or I-9 forms for the acupuncturists;

(v)     failed to withhold federal, state or city taxes on behalf of the acupuncturists;

(vi)    compelled the acupuncturists to pay for their own malpractice insurance at their own expense;

(vii)   failed to cover the acupuncturists for either unemployment or workers' compensation benefits; and

(viii)  filed corporate and payroll tax returns (e.g. Internal Revenue Service ("IRS") forms 1120 and 941) that represented to the IRS and to the New York State Department of Taxation that the acupuncturists were independent contractors.

248.    By electing to treat the acupuncturists as independent contractors, the Defendants realize significant economic benefits.

249.    The Defendants nevertheless fraudulently billed for acupuncture services as if they were provided by actual employees of the PC Defendants, to make it appear as if the services were eligible for reimbursement. The Defendants' misrepresentations were consciously designed to

mislead Liberty Mutual into believing that it was obligated to pay for these services, when in fact Liberty Mutual was not.

250. Furthermore, the Defendants attempted to conceal the fact that the acupuncture services were performed by independent contractors by falsely listing the treating provider on the billing as an employee. As noted above however, the treating acupuncturists were aware they were not employees of the PC Defendants, but rather independent contractors.

251. Because the acupuncturists were independent contractors the PC Defendants never had any right to bill for or collect No-Fault Benefits in connection with services performed by them and billed by the PC Defendants.

## VI.    The Fraudulent NF-3 Forms Submitted to Liberty Mutual

252. To support the fraudulent healthcare charges, statutorily prescribed claim forms for No-Fault Benefits (i.e., NF-3 forms) consistently have been submitted to Liberty Mutual by and on behalf of the Defendants seeking payment for services for which the PC Defendants are ineligible to receive payment.

253. The NF-3 forms submitted to Liberty Mutual by and on behalf of the PC Defendants are false and misleading in the following material respects:

    (i)      The NF-3 forms uniformly misrepresent to Liberty Mutual that the PC Defendants are lawfully licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12). In fact, the PC Defendants are not properly licensed in that they are medical professional corporations that were fraudulently incorporated and have been owned and controlled by the Management Defendants, who are not physicians.

    (ii)      The NF-3 forms uniformly misrepresent to Liberty Mutual that the PC Defendants are lawfully licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12). In fact, the PC Defendants are not properly licensed in that they are medical professional corporations that engaged in unlawful fee splitting with the Management Defendants and others.

(iii)      The NF-3 forms uniformly misrepresent to Liberty Mutual that the PC Defendants are eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.11 for acupuncture services that were performed. In fact, the PC Defendants are not eligible to seek or pursue collection of No-Fault Benefits associated with the acupuncture services because the services were not provided by employees of the PC Defendants but rather were performed by independent contractors.

(iv)      The NF-3 forms uniformly misrepresented to Liberty Mutual that services provided by the PC Defendants were medically necessary and billed properly, and therefore, the PC Defendants were eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12). In fact, the pertinent acupuncture services were not performed in accordance with basic, legitimate acupuncture treatment practices. As such, the services that actually were provided – to the extent that they were provided at all – were not medically necessary, rendering the PC Defendants them ineligible to receive reimbursement for those services under the No-Fault Laws.

(v)      The NF-3 forms uniformly misrepresented to Liberty Mutual the level and nature of services in order to mislead Liberty Mutual into paying for such services. In fact, the PC Defendants' bills misrepresented and exaggerated the level of services provided and unbundled the services to inflate the charges.

## VII.    Defendants' Fraudulent Concealment and Liberty Mutual's Justifiable Reliance

254.    The Defendants legally and ethically are obligated to act honestly and with integrity in connection with the billing that they submit, or caused to be submitted, to Liberty Mutual.

255.    To induce Liberty Mutual to promptly pay the fraudulent charges, the Defendants systematically have concealed their fraud and have gone to great lengths to accomplish this concealment.

256.    Specifically, the Defendants knowingly have misrepresented and concealed facts related to the PC Defendants in an effort to prevent discovery that the professional corporations are unlawfully incorporated, owned and controlled by non-medical professionals and engaged in fee splitting, and therefore are ineligible to bill for or collect No-Fault Benefits. For example,

the Defendants misrepresented ownership of and control over the PC Defendants in filings with the New York State Department of Education, so as to induce the New York State Department of Education to issue the licenses required to permit acupuncture to be practiced through the PC Defendants. Additionally, the Management Defendants entered into billing and financial arrangements with the PC Defendants that were designed to, and did, conceal their true ownership of and control over the PC Defendants, and the illegal fee splitting.

257.    Likewise, in every bill that the Defendants submitted or caused to be submitted to Liberty Mutual, the Defendants uniformly misrepresented that the PC Defendants properly were incorporated, lawfully licensed, and eligible to bill for and collect No-Fault Benefits, when in fact they were not.

258.    What is more, Defendants have created multiple professional corporations with different tax identification numbers in order to reduce the amount of billing submitted through any single professional corporation, thereby preventing Liberty Mutual from identifying all of the fraudulent professional corporations that were part of the coordinated scheme and/or the pattern of fraudulent charges submitted by any one entity.

259.    In addition, in most of the bills that the Defendants submitted or caused to be submitted to Liberty Mutual, the Defendants uniformly misrepresented that the acupuncture services allegedly performed through the PC Defendants were performed by employees of the PC Defendants, when in fact they were performed by independent contractors.

260.    Furthermore, the Defendants knowingly have misrepresented and concealed facts in order to prevent Liberty Mutual from discovering that the acupuncture services provided through the PC Defendants were billed improperly and performed pursuant to a fraudulent pre-determined protocol designed to maximize the charges that can be submitted.

261. The Defendants have hired law firms to pursue collection of the fraudulent charges from Liberty Mutual and other insurers. These law firms routinely file expensive and time-consuming litigation against Liberty Mutual and other insurers if the charges are not promptly paid in full. In fact, even after Anikeyev's guilty plea, the PC Defendants continue to have legal counsel pursue litigation against Liberty Mutual and other insurers without regard for the fact that the PCs have been engaged in fraud.

262. Liberty Mutual is under statutory and contractual obligations to promptly and fairly process claims within 30 days. The facially-valid documents submitted to Liberty Mutual in support of the fraudulent charges at issue, combined with the material misrepresentations described above, were designed to and did cause Liberty Mutual to rely upon them. As a result, Liberty Mutual has incurred damages of more than $1,500,000.00 based upon the fraudulent charges representing payments made by Liberty Mutual on or after 2007.

263. Liberty Mutual maintains standard office practices and procedures that are designed to and do ensure that No-Fault claim denial forms or requests for additional verification of No-Fault claims are properly addressed and mailed in a timely manner in accordance with the No-Fault Laws.

264. In accordance with the No-Fault Laws, and Liberty Mutual's standard office practices and procedures, Liberty Mutual either: (i) timely denied the pending claims for No-Fault Benefits submitted through the PC Defendants; (ii) timely issued requests for additional verification with respect to the pending claims for No-Fault Benefits submitted through the PC Defendants, yet failed to obtain compliance with the request for additional verification; or else (iii) the time in which to deny the pending claims for No-Fault Benefits submitted through the PC Defendants, or else to request additional verification of those claims, has not expired.

265. Based upon the Defendants' material misrepresentations and other affirmative acts to conceal their fraud from Liberty Mutual, Liberty Mutual did not discover and could not reasonably have discovered that its damages were attributable to fraud until shortly before it filed this Complaint.

## FIRST CAUSE OF ACTION
### Against All Defendants
### (Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)

266. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 265 above.

267. There is an actual case in controversy between Liberty Mutual and the Defendants, regarding more than $3,830,000.00 in fraudulent billing for healthcare services that has been submitted to Liberty Mutual.

268. The PC Defendants have no right to receive payment for any pending bills submitted to Liberty Mutual because they are fraudulently incorporated, not truly owned by the Nominal Owner Defendants, and are instead owned and controlled by the Management Defendants, who are not licensed acupuncturists, and, therefore, are ineligible to seek or recover No-Fault Benefits.

269. The PC Defendants have no right to receive payment for any pending bills submitted to Liberty Mutual because they engaged in unlawful fee-splitting with the Management Defendants, who are not licensed acupuncturists, and with others.

270. The PC Defendants have no right to receive payment for any pending bills submitted to Liberty Mutual for acupuncture services because the services were provided by independent contractors and not employees of the PC Defendants.

271. The PC Defendants have no right to receive payment for any pending bills submitted to Liberty Mutual because the billed-for services were fraudulently inflated and exaggerated, and were performed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control the PC Defendants, in contravention of New York law.

272. Accordingly, Liberty Mutual requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that:

(i) the PC Defendants have no right to receive payment for any pending bills submitted to Liberty Mutual because the professional corporations are fraudulently incorporated, not truly owned by the Nominal Owner Defendants, and instead owned and/or controlled by non-acupuncturists and, therefore, are ineligible to seek or recover no-fault benefits;

(ii) the PC Defendants have no right to receive payment for any pending bills submitted to Liberty Mutual because the professional corporations engaged in unlawful fee-splitting;

(iii) the PC Defendants have no right to receive payment for any pending bills submitted to Liberty Mutual because the billed-for services were fraudulently inflated and exaggerated, and were performed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control the PC Defendants, in contravention of New York laws; and

(iv) the PC Defendants have no right to receive payment for any pending bills for acupuncture services submitted to Liberty Mutual because in many instances the acupuncture services billed were not provided by individuals employed by the professional corporations.

**SECOND CAUSE OF ACTION**
**Against O. Lendel and Anikeyev**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

273. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 272 above.

274. Okslen Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

275. O. Lendel and Anikeyev knowingly have conducted and/or participated, directly or indirectly, in the conduct of Okslen's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills on a continuous basis for over two years seeking payments that Okslen was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the billed-for services were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control Okslen in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of Okslen. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "1."

276. Okslen's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which O. Lendel and Anikeyev operate Okslen, insofar as Okslen never has been eligible to bill for or collect No-Fault Benefits, and acts of mail fraud therefore are essential in order for Okslen to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through Okslen to the present day.

277. Okslen is engaged in inherently unlawful acts, inasmuch as its very corporate existence is an unlawful act, considering that it is fraudulently incorporated, owned and

controlled by non-acupuncturists, and its existence therefore depends on continuing misrepresentations made to the New York State Department of Education and the New York State Department of State. Okslen likewise is engaged in inherently unlawful acts inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to Liberty Mutual and other insurers. These inherently unlawful acts are taken by Liberty Mutual in pursuit of inherently unlawful goals – namely, the theft of money from Liberty Mutual and other insurers through fraudulent No-Fault billing.

278.    Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $217,000.00 pursuant to the fraudulent bills submitted by the Defendants through Okslen since November 12, 2004.

279.    By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## THIRD CAUSE OF ACTION
### Against O. Lendel and Anikeyev
### (Violation of RICO, 18 U.S.C. § 1962(d))

280.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 279 above.

281.    Okslen Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

282.    O. Lendel and Anikeyev are employed by and/or associated with the Okslen enterprise.

283.    O. Lendel and Anikeyev knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Okslen enterprise's affairs,

through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills seeking payments that Okslen was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the billed-for services were unbundled and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control Okslen in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of Okslen. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "1." Each such mailing was made in furtherance of the mail fraud scheme.

284.    O. Lendel and Anikeyev knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud Liberty Mutual and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to Liberty Mutual.

285.    Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $217,000.00 pursuant to the fraudulent bills submitted by the Defendants through Okslen.

286.    By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## FOURTH CAUSE OF ACTION
### Against Okslen, O. Lendel, and Anikeyev
### (Common Law Fraud)

287.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 286 above.

288.    Okslen, O. Lendel and Anikeyev intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual and concealed material facts from Liberty Mutual in the course of their submission of hundreds of fraudulent bills seeking payment for acupuncture services.

289.    The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that Okslen is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact it is fraudulently incorporated and actually owned and controlled by non-acupuncturists; (ii) in every claim, the representation that Okslen is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact the professional corporation engages in illegal fee-splitting with non-acupuncturists; (iii) in every claim, the representation that the billed-for services were properly billed, when in fact the billed-for services were inflated, unbundled and were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals that own and control Okslen in contravention of New York law, and (iv) in virtually all of the claims that the billed-for services were for services provided by employees of Okslen, when, in fact, the services were provided by independent contractors and not employees of Okslen.

290. Okslen, O. Lendel and Anikeyev intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce Liberty Mutual to pay charges submitted through Okslen that were not compensable under the No-Fault Laws.

291. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $217,000.00 pursuant to the fraudulent bills submitted by the Defendants through Okslen.

292. The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

293. Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## FIFTH CAUSE OF ACTION
### Against Okslen, O. Lendel and Anikeyev
### (Unjust Enrichment)

294. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 293 above.

295. As set forth above, Okslen, O. Lendel and Anikeyev have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

296. When Liberty Mutual paid the bills and charges submitted by or on behalf of Okslen for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

297. Okslen, O. Lendel, and Anikeyev have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

298. Defendants' retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

299. By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $217,000.00.

### SIXTH CAUSE OF ACTION
**Against Matskina and Anikeyev**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

300. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 299 above.

301. Bay Needle Acupuncture, PC is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

302. Matskina and Anikeyev knowingly have conducted and/or participated, directly or indirectly, in the conduct of Bay Needle's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills on a continuous basis for six years seeking payments that Bay Needle was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the billed-for services were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control Bay Needle in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of Bay Needle. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in

part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "2."

303.    Bay Needle's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Matskina and Anikeyev operate Bay Needle, insofar as Bay Needle never has been eligible to bill for or collect No-Fault Benefits, and acts of mail fraud therefore are essential in order for Bay Needle to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through Bay Needle to the present day.

304.    Bay Needle is engaged in inherently unlawful acts, inasmuch as its very corporate existence is an unlawful act, considering that it is fraudulently incorporated, owned and controlled by non-acupuncturists, and its existence therefore depends on continuing misrepresentations made to the New York State Department of Education and the New York State Department of State. Bay Needle likewise is engaged in inherently unlawful acts inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to Liberty Mutual and other insurers. These inherently unlawful acts are taken by Liberty Mutual in pursuit of inherently unlawful goals – namely, the theft of money from Liberty Mutual and other insurers through fraudulent No-Fault billing.

305.    Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $7,700.00 pursuant to the fraudulent bills submitted by the Defendants through Bay Needle since March 14, 2005.

306. By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## SEVENTH CAUSE OF ACTION
### Against Matskina and Anikeyev
### (Violation of RICO, 18 U.S.C. § 1962(d))

307. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 306 above.

308. Bay Needle Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

309. Matskina and Anikeyev are employed by and/or associated with the Bay Needle enterprise.

310. Matskina and Anikeyev knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Bay Needle enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills seeking payments that Bay Needle was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the billed-for services were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control Bay Needle in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of Bay Needle. A representative sample of the fraudulent bills and corresponding mailings submitted to

Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "2." Each such mailing was made in furtherance of the mail fraud scheme.

311. Matskina and Anikeyev knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud Liberty Mutual and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to Liberty Mutual.

312. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $7,700.00 pursuant to the fraudulent bills submitted by the Defendants through Bay Needle.

313. By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## EIGHTH CAUSE OF ACTION
### Against Bay Needle, Matskina, and Anikeyev
### (Common Law Fraud)

314. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 313 above.

315. Bay Needle, Matskina and Anikeyev intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual and concealed material facts from Liberty Mutual in the course of their submission of hundreds of fraudulent bills seeking payment for acupuncture services.

316. The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that Bay Needle is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and

11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact it is fraudulently incorporated and actually owned and controlled by non-acupuncturists; (ii) in every claim, the representation that Bay Needle is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact the professional corporation engages in illegal fee-splitting with non-acupuncturists; (iii) in every claim, the representation that the billed-for services were properly billed, when in fact the billed-for services were inflated, were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals that own and control Bay Needle in contravention of New York law; and (iv) in virtually all of the claims that the billed for services were for provided by employees of Bay Needle, when in fact, the services were provided by independent contractors and not employees of Bay Needle .

317.    Bay Needle, Matskina and Anikeyev intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce Liberty Mutual to pay charges submitted through Bay Needle that were not compensable under the No-Fault Laws.

318.    Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $7,700.00 pursuant to the fraudulent bills submitted by the Defendants through Bay Needle.

319.    The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

320.    Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## NINTH CAUSE OF ACTION
### Against Bay Needle, Matskina and Anikeyev
### (Unjust Enrichment)

321.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 320 above.

322.    As set forth above, Bay Needle, Matskina and Anikeyev have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

323.    When Liberty Mutual paid the bills and charges submitted by or on behalf of Bay Needle for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

324.    Bay Needle, Matskina and Anikeyev have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

325.    Defendants' retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

326.    By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $7,700.00.

## TENTH CAUSE OF ACTION
### Against Kapustina and Anikeyev
### (Violation of RICO, 18 U.S.C. § 1962(c))

327.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 326 above.

328.    Perfect Point Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

329. Kapustina and Anikeyev knowingly have conducted and/or participated, directly or indirectly, in the conduct of Perfect Point's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills on a continuous basis for over two years seeking payments that Perfect Point was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the billed-for services were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control Perfect Point in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of Perfect Point. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "3."

330. Perfect Point's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Kapustina and Anikeyev operate Perfect Point, insofar as Perfect Point never has been eligible to bill for or collect No-Fault Benefits, and acts of mail fraud therefore are essential in order for Perfect Point to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through Perfect Point to the present day.

331. Perfect Point is engaged in inherently unlawful acts, inasmuch as its very corporate existence is an unlawful act, considering that it is fraudulently incorporated, owned

and controlled by non-acupuncturists, and its existence therefore depends on continuing misrepresentations made to the New York State Department of Education and the New York State Department of State. Perfect Point likewise is engaged in inherently unlawful acts inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to Liberty Mutual and other insurers. These inherently unlawful acts are taken by Liberty Mutual in pursuit of inherently unlawful goals – namely, the theft of money from Liberty Mutual and other insurers through fraudulent No-Fault billing.

332. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $79,000.00 pursuant to the fraudulent bills submitted by the Defendants through Perfect Point since September 23, 2005.

333. By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

### ELEVENTH CAUSE OF ACTION
**Against Kapustina and Anikeyev**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

334. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 333 above.

335. Perfect Point Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

336. Kapustina and Anikeyev are employed by and/or associated with the Perfect Point enterprise.

337. Kapustina and Anikeyev knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Perfect Point enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal

mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills seeking payments that Perfect Point was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the billed-for services were performed, were unbundled and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control Perfect Point in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of Perfect Point. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "3." Each such mailing was made in furtherance of the mail fraud scheme.

338. Kapustina and Anikeyev knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud Liberty Mutual and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to Liberty Mutual.

339. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $79,000.00 pursuant to the fraudulent bills submitted by the Defendants through Perfect Point.

340. By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**TWELFTH CAUSE OF ACTION**
**Against Perfect Point, Kapustina and Anikeyev**
**(Common Law Fraud)**

341. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 340 above.

342. Perfect Point, Kapustina and Anikeyev intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual and concealed material facts from Liberty Mutual in the course of their submission of hundreds of fraudulent bills seeking payment for acupuncture services.

343. The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that Perfect Point is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact it is fraudulently incorporated and actually owned and controlled by non-acupuncturists; (ii) in every claim, the representation that Perfect Point is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact the professional corporation engages in illegal fee-splitting with non-acupuncturists; (iii) in every claim, the representation that the billed-for services were properly billed, when in fact the billed-for services were inflated, unbundled and were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals that own and control Perfect Point in contravention of New York law; and (iv) in virtually all of the claims that the billed-for services were for services provided by employees of Perfect Point, when, in fact, the services were provided by independent contractors and not employees of Perfect Point.

344. Perfect Point, Kapustina and Anikeyev intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce Liberty Mutual to pay charges submitted through Perfect Point that were not compensable under the No-Fault Laws.

345.     Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $79,000.00 pursuant to the fraudulent bills submitted by the Defendants through Perfect Point.

346.     The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

347.     Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## THIRTEENTH CAUSE OF ACTION
### Against Perfect Point, Kapustina and Anikeyev
### (Unjust Enrichment)

348.     Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 347 above.

349.     As set forth above, Perfect Point, Kapustina and Anikeyev have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

350.     When Liberty Mutual paid the bills and charges submitted by or on behalf of Perfect Point for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

351.     Perfect Point, Kapustina and Anikeyev have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

352.     Defendants' retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

353.    By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $79,000.00.

## FOURTEENTH CAUSE OF ACTION
### Against Kolomiytseva and Anikeyev
### (Violation of RICO, 18 U.S.C. § 1962(c))

354.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 353 above.

355.    Karina K Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

356.    Kolomiytseva and Anikeyev knowingly have conducted and/or participated, directly or indirectly, in the conduct of Karina K's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills on a continuous basis for over two years seeking payments that Karina K was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the billed-for services were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control Karina K in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of Karina K.  A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "4."

357. Karina K's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Kolomiytseva and Anikeyev operate Karina K, insofar as Karina K never has been eligible to bill for or collect No-Fault Benefits, and acts of mail fraud therefore are essential in order for Karina K to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through Karina K to the present day.

358. Karina K is engaged in inherently unlawful acts, inasmuch as its very corporate existence is an unlawful act, considering that it is fraudulently incorporated, owned and controlled by non-acupuncturists, and its existence therefore depends on continuing misrepresentations made to the New York State Department of Education and the New York State Department of State. Karina K likewise is engaged in inherently unlawful acts inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to Liberty Mutual and other insurers. These inherently unlawful acts are taken by Liberty Mutual in pursuit of inherently unlawful goals – namely, the theft of money from Liberty Mutual and other insurers through fraudulent No-Fault billing.

359. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $67,000.00 pursuant to the fraudulent bills submitted by the Defendants through Karina K since May 19, 2006.

360. By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## FIFTEENTH CAUSE OF ACTION
### Against Kolomiytseva and Anikeyev
### (Violation of RICO, 18 U.S.C. § 1962(d))

361. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 360 above.

362. Karina K Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

363. Kolomiytseva and Anikeyev are employed by and/or associated with the Karina K enterprise.

364. Kolomiytseva and Anikeyev knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Karina K enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills seeking payments that Karina K was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the billed-for services were performed, were unbundled and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control Karina K in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of Karina K. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "4." Each such mailing was made in furtherance of the mail fraud scheme.

365. Kolomiytseva and Anikeyev knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud Liberty Mutual and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to Liberty Mutual.

366. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $67,000.00 pursuant to the fraudulent bills submitted by the Defendants through Karina K.

367. By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**SIXTEENTH CAUSE OF ACTION**
**Against Karina K, Kolomiytseva and Anikeyev**
**(Common Law Fraud)**

368. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 367 above.

369. Karina K, Kolomiytseva and Anikeyev intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual and concealed material facts from Liberty Mutual in the course of their submission of hundreds of fraudulent bills seeking payment for acupuncture services.

370. The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that Karina K is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact it is fraudulently incorporated and actually owned and controlled by non-acupuncturists; (ii) in every claim, the representation that Karina K is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law §

5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact the professional corporation engages in illegal fee-splitting with non-acupuncturists; (iii) in every claim, the representation that the billed-for services were properly billed, when in fact the billed-for services were inflated, unbundled and were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals that own and control Karina K in contravention of New York law; and (iv) in virtually all of the claims that the billed-for services were for services provided by employees of Karina K, when, in fact, the services were provided by independent contractors and not employees of Karina K.

371. Karina K, Kolomiytseva and Anikeyev intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce Liberty Mutual to pay charges submitted through Karina K that were not compensable under the No-Fault Laws.

372. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $67,000.00 pursuant to the fraudulent bills submitted by the Defendants through Karina K.

373. The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

374. Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## SEVENTEENTH CAUSE OF ACTION
### Against Karina K, Kolomiytseva and Anikeyev
### (Unjust Enrichment)

375. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 374 above.

376. As set forth above, Karina K, Kolomiytseva and Anikeyev have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

377. When Liberty Mutual paid the bills and charges submitted by or on behalf of Karina K for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

378. Karina K, Kolomiytseva and Anikeyev have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

379. Defendants' retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

380. By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $67,000.00.

## EIGHTEENTH CAUSE OF ACTION
### Against Matskina and Anikeyev
### (Violation of RICO, 18 U.S.C. § 1962(c))

381. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 380 above.

382. Healthy Way Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

383. Matskina and Anikeyev knowingly have conducted and/or participated, directly or indirectly, in the conduct of Healthy Way's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon

the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills on a continuous basis for over two years seeking payments that Healthy Way was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the billed-for services were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control Healthy Way in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of Healthy Way. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "5."

384. Healthy Way's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Matskina and Anikeyev operate Healthy Way, insofar as Healthy Way never has been eligible to bill for or collect No-Fault Benefits, and acts of mail fraud therefore are essential in order for Healthy Way to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through Healthy Way to the present day.

385. Healthy Way is engaged in inherently unlawful acts, inasmuch as its very corporate existence is an unlawful act, considering that it is fraudulently incorporated, owned and controlled by non-acupuncturists, and its existence therefore depends on continuing misrepresentations made to the New York State Department of Education and the New York State Department of State. Healthy Way likewise is engaged in inherently unlawful acts

inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to Liberty Mutual and other insurers. These inherently unlawful acts are taken by Liberty Mutual in pursuit of inherently unlawful goals – namely, the theft of money from Liberty Mutual and other insurers through fraudulent No-Fault billing.

386. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $168,000.00 pursuant to the fraudulent bills submitted by the Defendants through Healthy Way since August 21, 2006.

387. By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## NINETEENTH CAUSE OF ACTION
### Against Matskina and Anikeyev
### (Violation of RICO, 18 U.S.C. § 1962(d))

388. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 387 above.

389. Healthy Way Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

390. Matskina and Anikeyev are employed by and/or associated with the Healthy Way enterprise.

391. Matskina and Anikeyev knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Healthy Way enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills seeking payments that Healthy Way was not

eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the billed-for services were performed, were unbundled and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control Healthy Way in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of Healthy Way. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "5." Each such mailing was made in furtherance of the mail fraud scheme.

392. Matskina and Anikeyev knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud Liberty Mutual and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to Liberty Mutual.

393. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $168,000.00 pursuant to the fraudulent bills submitted by the Defendants through Healthy Way.

394. By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## TWENTIETH CAUSE OF ACTION
### Against Healthy Way, Matskina and Anikeyev
### (Common Law Fraud)

395. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 394 above.

396. Healthy Way, Matskina and Anikeyev intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual and concealed material facts from Liberty Mutual in the course of their submission of hundreds of fraudulent bills seeking payment for acupuncture services.

397. The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that Healthy Way is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact it is fraudulently incorporated and actually owned and controlled by non-acupuncturists; (ii) in every claim, the representation that Healthy Way is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact the professional corporation engages in illegal fee-splitting with non-acupuncturists; (iii) in every claim, the representation that the billed-for services were properly billed, when in fact the billed-for services were inflated, unbundled and were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals that own and control Healthy Way in contravention of New York law; and (iv) in virtually all of the claims that the billed-for services were for services provided by employees of Healthy Way, when, in fact, the services were provided by independent contractors and not employees of Healthy Way.

398. Healthy Way, Matskina and Anikeyev intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce Liberty Mutual to pay charges submitted through Healthy Way that were not compensable under the No-Fault Laws.

399.    Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $168,000.00 pursuant to the fraudulent bills submitted by the Defendants through Healthy Way.

400.    The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

401.    Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## TWENTY-FIRST CAUSE OF ACTION
### Against Healthy Way, Matskina and Anikeyev
### (Unjust Enrichment)

402.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 401 above.

403.    As set forth above, Healthy Way, Matskina and Anikeyev have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

404.    When Liberty Mutual paid the bills and charges submitted by or on behalf of Healthy Way for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

405.    Healthy Way, Matskina and Anikeyev have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

406.    Defendants' retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

407. By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $168,000.00.

## TWENTY-SECOND CAUSE OF ACTION
### Against O. Lendel and Anikeyev
### (Violation of RICO, 18 U.S.C. § 1962(c))

408. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 407 above.

409. VS Care Acupuncture, PC is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

410. O. Lendel and Anikeyev knowingly have conducted and/or participated, directly or indirectly, in the conduct of VS' affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills on a continuous basis for six years seeking payments that VS was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the billed-for services were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control VS in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of VS. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "6."

411.    VS' business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers.  The predicate acts of mail fraud are the regular way in which O. Lendel and Anikeyev operate VS, insofar as VS never has been eligible to bill for or collect No-Fault Benefits, and acts of mail fraud therefore are essential in order for VS to function.  Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through VS to the present day.

412.    VS is engaged in inherently unlawful acts, inasmuch as its very corporate existence is an unlawful act, considering that it is fraudulently incorporated, owned and controlled by non-acupuncturists, and its existence therefore depends on continuing misrepresentations made to the New York State Department of Education and the New York State Department of State.  VS, likewise is engaged in inherently unlawful acts inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to Liberty Mutual and other insurers.  These inherently unlawful acts are taken by Liberty Mutual in pursuit of inherently unlawful goals – namely, the theft of money from Liberty Mutual and other insurers through fraudulent No-Fault billing.

413.    Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $30,700.00 pursuant to the fraudulent bills submitted by the Defendants through VS since October 18, 2006.

414.    By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## TWENTY-THIRD CAUSE OF ACTION
### Against O. Lendel and Anikeyev
### (Violation of RICO, 18 U.S.C. § 1962(d))

415.     Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 414 above.

416.     VS Care Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

417.     O. Lendel and Anikeyev are employed by and/or associated with the VS enterprise.

418.     O. Lendel and Anikeyev knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the VS enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills seeking payments that VS was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the billed-for services were performed, were unbundled and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control VS in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of VS. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "6." Each such mailing was made in furtherance of the mail fraud scheme.

419. O. Lendel and Anikeyev knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud Liberty Mutual and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to Liberty Mutual.

420. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $30,700.00 pursuant to the fraudulent bills submitted by the Defendants through VS.

421. By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## TWENTY-FOURTH CAUSE OF ACTION
### Against VS, O. Lendel and Anikeyev
### (Common Law Fraud)

422. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 421 above.

423. VS, O. Lendel and Anikeyev intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual and concealed material facts from Liberty Mutual in the course of their submission of hundreds of fraudulent bills seeking payment for acupuncture services.

424. The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that Bay Needle is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact it is fraudulently incorporated and actually owned and controlled by non-acupuncturists; (ii) in every claim, the representation that VS is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law §

5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact the professional corporation engages in illegal fee-splitting with non-acupuncturists; (iii) in every claim, the representation that the billed-for services were properly billed, when in fact the billed-for services were inflated, unbundled and were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals that own and control VS in contravention of New York law; and (iv) in virtually all of the claims that the billed for services were for provided by employees of VS, when in fact, the services were provided by independent contractors and not employees of VS.

425.    VS, O. Lendel and Anikeyev intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce Liberty Mutual to pay charges submitted through VS that were not compensable under the No-Fault Laws.

426.    Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $30,700.00 pursuant to the fraudulent bills submitted by the Defendants through VS.

427.    The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

428.    Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

### TWENTY-FIFTH CAUSE OF ACTION
### Against VS, O. Lendel and Anikeyev
### (Unjust Enrichment)

429.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 428 above.

430. As set forth above, VS, O. Lendel and Anikeyev have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

431. When Liberty Mutual paid the bills and charges submitted by or on behalf of VS for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

432. VS, O. Lendel and Anikeyev have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

433. Defendants' retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

434. By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $30,700.00.

## TWENTY-SIXTH CAUSE OF ACTION
### Against Kolomiytseva and Anikeyev
### (Violation of RICO, 18 U.S.C. § 1962(c))

435. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 434 above.

436. Alpha Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

437. Kolomiytseva and Anikeyev knowingly have conducted and/or participated, directly or indirectly, in the conduct of Alpha's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills on a continuous basis for over two years seeking payments that Alpha was not eligible to receive

under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the billed-for services were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control Alpha in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of Alpha. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "7."

438. Alpha's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Kolomiytseva and Anikeyev operate Alpha, insofar as Alpha never has been eligible to bill for or collect No-Fault Benefits, and acts of mail fraud therefore are essential in order for Alpha to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through Alpha to the present day.

439. Alpha is engaged in inherently unlawful acts, inasmuch as its very corporate existence is an unlawful act, considering that it is fraudulently incorporated, owned and controlled by non-acupuncturists, and its existence therefore depends on continuing misrepresentations made to the New York State Department of Education and the New York State Department of State. Alpha likewise is engaged in inherently unlawful acts inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to Liberty Mutual and other insurers. These inherently unlawful acts are taken by Liberty Mutual in pursuit of

inherently unlawful goals – namely, the theft of money from Liberty Mutual and other insurers through fraudulent No-Fault billing.

440.   Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $37,700.00 pursuant to the fraudulent bills submitted by the Defendants through Alpha since November 22, 2006.

441.   By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## TWENTY-SEVENTH CAUSE OF ACTION
### Against Kolomiytseva and Anikeyev
### (Violation of RICO, 18 U.S.C. § 1962(d))

442.   Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 441 above.

443.   Alpha Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

444.   Kolomiytseva and Anikeyev are employed by and/or associated with the Alpha enterprise.

445.   Kolomiytseva and Anikeyev knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Alpha enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills seeking payments that Alpha was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the

billed-for services were performed, were unbundled and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control Alpha in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of Alpha. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "7." Each such mailing was made in furtherance of the mail fraud scheme.

446. Kolomiytseva and Anikeyev knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud Liberty Mutual and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to Liberty Mutual.

447. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $37,700.00 pursuant to the fraudulent bills submitted by the Defendants through Alpha.

448. By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## TWENTY-EIGHTH CAUSE OF ACTION
### Against Alpha, Kolomiytseva and Anikeyev
### (Common Law Fraud)

449. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 448 above.

450. Alpha, Kolomiytseva and Anikeyev intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual and concealed material facts from Liberty

Mutual in the course of their submission of hundreds of fraudulent bills seeking payment for acupuncture services.

451. The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that Alpha is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact it is fraudulently incorporated and actually owned and controlled by non-acupuncturists; (ii) in every claim, the representation that Alpha is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact the professional corporation engages in illegal fee-splitting with non-acupuncturists; (iii) in every claim, the representation that the billed-for services were properly billed, when in fact the billed-for services were inflated, unbundled and were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals that own and control Alpha in contravention of New York law, and (iv) in virtually all of the claims that the billed-for services were for services provided by employees of Alpha, when, in fact, the services were provided by independent contractors and not employees of Alpha.

452. Alpha, Kolomiytseva and Anikeyev intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce Liberty Mutual to pay charges submitted through Alpha that were not compensable under the No-Fault Laws.

453. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $37,700.00 pursuant to the fraudulent bills submitted by the Defendants through Alpha.

454.   The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

455.   Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## TWENTY-NINTH CAUSE OF ACTION
### Against Alpha, Kolomiytseva and Anikeyev
### (Unjust Enrichment)

456.   Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 455 above.

457.   As set forth above, Alpha, Kolomiytseva and Anikeyev have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

458.   When Liberty Mutual paid the bills and charges submitted by or on behalf of Alpha for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

459.   Alpha, Kolomiytseva and Anikeyev have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

460.   Defendants' retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

461.   By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $37,700.00.

## THIRTIETH CAUSE OF ACTION
### Against Kornilova and Anikeyev
### (Violation of RICO, 18 U.S.C. § 1962(c))

462.   Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 461 above.

463.   Lotus Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

464.   Kornilova and Anikeyev knowingly have conducted and/or participated, directly or indirectly, in the conduct of Lotus's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills on a continuous basis for over two years seeking payments that Lotus was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the billed-for services were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control Lotus in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of Lotus.  A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "8."

465.   Lotus's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers.  The predicate acts of mail fraud are the regular way in which Kornilova and Anikeyev operate Lotus, insofar as Lotus never has been eligible to bill for or collect No-Fault Benefits, and acts of mail fraud therefore are essential in

108

order for Lotus to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through Lotus to the present day.

466. Lotus is engaged in inherently unlawful acts, inasmuch as its very corporate existence is an unlawful act, considering that it is fraudulently incorporated, owned and controlled by non-acupuncturists, and its existence therefore depends on continuing misrepresentations made to the New York State Department of Education and the New York State Department of State. Lotus likewise is engaged in inherently unlawful acts inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to Liberty Mutual and other insurers. These inherently unlawful acts are taken by Liberty Mutual in pursuit of inherently unlawful goals – namely, the theft of money from Liberty Mutual and other insurers through fraudulent No-Fault billing.

467. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $64,800.00 pursuant to the fraudulent bills submitted by the Defendants through Lotus since January 26, 2007.

468. By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## THIRTY-FIRST CAUSE OF ACTION
### Against Kornilova and Anikeyev
### (Violation of RICO, 18 U.S.C. § 1962(d))

469. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 468 above.

470. Lotus Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

471. Kornilova and Anikeyev are employed by and/or associated with the Lotus enterprise.

472. Kornilova and Anikeyev knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Lotus enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills seeking payments that Lotus was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the billed-for services were performed, were unbundled and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control Lotus in contravention of New York law, and in many cases were not performed at all; and (iv) the billed-for services were provided by independent contractors and not employees of Lotus. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "8." Each such mailing was made in furtherance of the mail fraud scheme.

473. Kornilova and Anikeyev knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud Liberty Mutual and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to Liberty Mutual.

474. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $64,800.00 pursuant to the fraudulent bills submitted by the Defendants through Lotus.

475. By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## THIRTY-SECOND CAUSE OF ACTION
### Against Lotus, Kornilova and Anikeyev
### (Common Law Fraud)

476. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 475 above.

477. Lotus, Kornilova and Anikeyev intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual and concealed material facts from Liberty Mutual in the course of their submission of hundreds of fraudulent bills seeking payment for acupuncture services.

478. The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that Lotus is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact it is fraudulently incorporated and actually owned and controlled by non-acupuncturists; (ii) in every claim, the representation that Lotus is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact the professional corporation engages in illegal fee-splitting with non-acupuncturists; (iii) in every claim, the representation that the billed-for services were properly billed, when in fact the billed-for services were inflated,

unbundled and were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals that own and control Lotus in contravention of New York law; and (iv) in virtually all of the claims that the billed-for services were for services provided by employees of Lotus, when, in fact, the services were provided by independent contractors and not employees of Lotus.

479.    Lotus, Kornilova and Anikeyev intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce Liberty Mutual to pay charges submitted through Lotus that were not compensable under the No-Fault Laws.

480.    Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $64,800.00 pursuant to the fraudulent bills submitted by the Defendants through Lotus.

481.    The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

482.    Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## THIRTY-THIRD CAUSE OF ACTION
### Against Lotus, Kornilova and Anikeyev
### (Unjust Enrichment)

483.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 482 above.

484.    As set forth above, Lotus, Kornilova and Anikeyev have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

485. When Liberty Mutual paid the bills and charges submitted by or on behalf of Lotus for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

486. Lotus, Kornilova and Anikeyev have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

487. Defendants' retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

488. By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $64,800.00.

### THIRTY-FOURTH CAUSE OF ACTION
**Against Tsukanov and Anikeyev**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

489. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 487 above.

490. Sunrise Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

491. Tsukanov and Anikeyev knowingly have conducted and/or participated, directly or indirectly, in the conduct of Sunrise's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills on a continuous basis for over two years seeking payments that Sunrise was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the

billed-for services were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control Sunrise in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of Sunrise. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "9."

492. Sunrise's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Tsukanov and Anikeyev operate Sunrise, insofar as Sunrise never has been eligible to bill for or collect No-Fault Benefits, and acts of mail fraud therefore are essential in order for Sunrise to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through Sunrise to the present day.

493. Sunrise is engaged in inherently unlawful acts, inasmuch as its very corporate existence is an unlawful act, considering that it is fraudulently incorporated, owned and controlled by non-acupuncturists, and its existence therefore depends on continuing misrepresentations made to the New York State Department of Education and the New York State Department of State. Sunrise likewise is engaged in inherently unlawful acts inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to Liberty Mutual and other insurers. These inherently unlawful acts are taken by Liberty Mutual in pursuit of inherently unlawful goals – namely, the theft of money from Liberty Mutual and other insurers through fraudulent No-Fault billing.

494. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $111,000.00 pursuant to the fraudulent bills submitted by the Defendants through Sunrise since October 25, 2007.

495. By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## THIRTY-FIFTH CAUSE OF ACTION
### Against Tsukanov and Anikeyev
### (Violation of RICO, 18 U.S.C. § 1962(d))

496. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 495 above.

497. Sunrise Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

498. Tsukanov and Anikeyev are employed by and/or associated with the Sunrise enterprise.

499. Tsukanov and Anikeyev knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Sunrise enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills seeking payments that Sunrise was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the billed-for services were performed, were unbundled and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and

entities that own and control Sunrise in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of Sunrise. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "9." Each such mailing was made in furtherance of the mail fraud scheme.

500. Tsukanov and Anikeyev knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud Liberty Mutual and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to Liberty Mutual.

501. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $111,000.00 pursuant to the fraudulent bills submitted by the Defendants through Sunrise.

502. By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## THIRTY-SIXTH CAUSE OF ACTION
### Against Sunrise, Tsukanov and Anikeyev
### (Common Law Fraud)

503. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 502 above.

504. Sunrise, Tsukanov and Anikeyev intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual and concealed material facts from Liberty Mutual in the course of their submission of hundreds of fraudulent bills seeking payment for acupuncture services.

116

505.     The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that Sunrise is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact it is fraudulently incorporated and actually owned and controlled by non-acupuncturists; (ii) in every claim, the representation that Sunrise is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact the professional corporation engages in illegal fee-splitting with non-acupuncturists; (iii) in every claim, the representation that the billed-for services were properly billed, when in fact the billed-for services were inflated, unbundled and were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals that own and control Sunrise in contravention of New York law; and (iv) in virtually all of the claims that the billed-for services were for services provided by employees of Sunrise, when, in fact, the services were provided by independent contractors and not employees of Sunrise.

506.     Sunrise, Tsukanov and Anikeyev intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce Liberty Mutual to pay charges submitted through Sunrise that were not compensable under the No-Fault Laws.

507.     Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $111,000.00 pursuant to the fraudulent bills submitted by the Defendants through Sunrise.

508.     The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

509.    Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## THIRTY-SEVENTH CAUSE OF ACTION
### Against Sunrise, Tsukanov and Anikeyev
### (Unjust Enrichment)

510.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 509 above.

511.    As set forth above, Sunrise, Tsukanov and Anikeyev have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

512.    When Liberty Mutual paid the bills and charges submitted by or on behalf of Sunrise for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

513.    Sunrise, Tsukanov and Anikeyev have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

514.    Defendants' retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

515.    By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $111,000.00.

## THIRTY-EIGHTH CAUSE OF ACTION
### Against Kulagina and Anikeyev
### (Violation of RICO, 18 U.S.C. § 1962(c))

516.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 515 above.

517.    Easy Care Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

518.    Kulagina and Anikeyev knowingly have conducted and/or participated, directly or indirectly, in the conduct of Easy Care's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills on a continuous basis for over two years seeking payments that Easy Care was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the billed-for services were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control Easy Care in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of Easy Care. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "10."

519.    Easy Care's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Kulagina and Anikeyev operate Easy Care, insofar as Easy Care never has been eligible to bill for or collect No-Fault Benefits, and acts of mail fraud therefore are essential

119

in order for Easy Care to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through Easy Care to the present day.

520. Easy Care is engaged in inherently unlawful acts, inasmuch as its very corporate existence is an unlawful act, considering that it is fraudulently incorporated, owned and controlled by non-acupuncturists, and its existence therefore depends on continuing misrepresentations made to the New York State Department of Education and the New York State Department of State. Easy Care likewise is engaged in inherently unlawful acts inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to Liberty Mutual and other insurers. These inherently unlawful acts are taken by Liberty Mutual in pursuit of inherently unlawful goals – namely, the theft of money from Liberty Mutual and other insurers through fraudulent No-Fault billing.

521. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $239,000.00 pursuant to the fraudulent bills submitted by the Defendants through Easy Care since February 13, 2008.

522. By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## THIRTY-NINTH CAUSE OF ACTION
### Against Kulagina and Anikeyev
### (Violation of RICO, 18 U.S.C. § 1962(d))

523. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 522 above.

524. Easy Care Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

525. Kulagina and Anikeyev are employed by and/or associated with the Easy Care enterprise.

526. Kulagina and Anikeyev knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Easy Care enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills seeking payments that Easy Care was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the billed-for services were performed, were unbundled and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control Easy Care in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of Easy Care. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "10." Each such mailing was made in furtherance of the mail fraud scheme.

527. Kulagina and Anikeyev knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud Liberty Mutual and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to Liberty Mutual.

528.    Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $239,000.00 pursuant to the fraudulent bills submitted by the Defendants through Easy Care.

529.    By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**FORTIETH CAUSE OF ACTION**
**Against Easy Care, Kulagina and Anikeyev**
**(Common Law Fraud)**

530.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 529 above.

531.    Easy Care, Kulagina and Anikeyev intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual and concealed material facts from Liberty Mutual in the course of their submission of hundreds of fraudulent bills seeking payment for acupuncture services.

532.    The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that Easy Care is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact it is fraudulently incorporated and actually owned and controlled by non-acupuncturists; (ii) in every claim, the representation that Easy Care is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact the professional corporation engages in illegal fee-splitting with non-acupuncturists; (iii) in every claim, the representation that the billed-for services were properly billed, when in fact the billed-for services were inflated,

unbundled and were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals that own and control Easy Care in contravention of New York law; and (iv) in virtually all of the claims that the billed-for services were for services provided by employees of Easy Care, when, in fact, the services were provided by independent contractors and not employees of Easy Care.

533.    Easy Care, Kulagina and Anikeyev intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce Liberty Mutual to pay charges submitted through Easy Care that were not compensable under the No-Fault Laws.

534.    Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $239,000.00 pursuant to the fraudulent bills submitted by the Defendants through Easy Care.

535.    The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

536.    Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## FORTY-FIRST CAUSE OF ACTION
### Against Easy Care, Kulagina and Anikeyev
### (Unjust Enrichment)

537.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 536 above.

538.    As set forth above, Easy Care, Kulagina and Anikeyev have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

539.	When Liberty Mutual paid the bills and charges submitted by or on behalf of Easy Care for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

540.	Easy Care, Kulagina and Anikeyev have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

541.	Defendants' retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

542.	By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $239,000.00.

## FORTY-SECOND CAUSE OF ACTION
### Against Shimunov and Anikeyev
### (Violation of RICO, 18 U.S.C. § 1962(c))

543.	Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 542 above.

544.	Shirom Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

545.	Shimunov and Anikeyev knowingly have conducted and/or participated, directly or indirectly, in the conduct of Shirom's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills on a continuous basis for over two years seeking payments that Shirom was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the

billed-for services were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control Shirom in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of Shirom. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "11."

546. Shirom's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Shimunov and Anikeyev operate Shirom, insofar as Shirom never has been eligible to bill for or collect No-Fault Benefits, and acts of mail fraud therefore are essential in order for Shirom to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through Shirom to the present day.

547. Shirom is engaged in inherently unlawful acts, inasmuch as its very corporate existence is an unlawful act, considering that it is fraudulently incorporated, owned and controlled by non-acupuncturists, and its existence therefore depends on continuing misrepresentations made to the New York State Department of Education and the New York State Department of State. Shirom likewise is engaged in inherently unlawful acts inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to Liberty Mutual and other insurers. These inherently unlawful acts are taken by Liberty Mutual in pursuit of inherently unlawful goals – namely, the theft of money from Liberty Mutual and other insurers through fraudulent No-Fault billing.

548.   Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $55,000.00 pursuant to the fraudulent bills submitted by the Defendants through Shirom since April 15, 2008.

549.   By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

### FORTY-THIRD CAUSE OF ACTION
**Against Shimunov and Anikeyev**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

550.   Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 549 above.

551.   Shirom Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

552.   Shimunov and Anikeyev are employed by and/or associated with the Shirom enterprise.

553.   Shimunov and Anikeyev knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Shirom enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills seeking payments that Shirom was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the billed-for services were performed, were unbundled and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and

entities that own and control Shirom in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of Shirom. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "11." Each such mailing was made in furtherance of the mail fraud scheme.

554.    Shimunov and Anikeyev knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud Liberty Mutual and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to Liberty Mutual.

555.    Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $55,000.00 pursuant to the fraudulent bills submitted by the Defendants through Shirom.

556.    By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

### FORTY-FOURTH CAUSE OF ACTION
**Against Shirom, Shimunov and Anikeyev**
**(Common Law Fraud)**

557.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 556 above.

558.    Shirom, Shimunov and Anikeyev intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual and concealed material facts from Liberty Mutual in the course of their submission of hundreds of fraudulent bills seeking payment for acupuncture services.

127

559. The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that Shirom is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact it is fraudulently incorporated and actually owned and controlled by non-acupuncturists; (ii) in every claim, the representation that Shirom is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact the professional corporation engages in illegal fee-splitting with non-acupuncturists; (iii) in every claim, the representation that the billed-for services were properly billed, when in fact the billed-for services were inflated, unbundled and were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals that own and control Shirom in contravention of New York law; and (iv) in virtually all of the claims that the billed-for services were for services provided by employees of Shirom, when, in fact, the services were provided by independent contractors and not employees of Shirom.

560. Shirom, Shimunov and Anikeyev intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce Liberty Mutual to pay charges submitted through Shirom that were not compensable under the No-Fault Laws.

561. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $55,000.00 pursuant to the fraudulent bills submitted by the Defendants through Shirom.

562. The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

563.    Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## FORTY-FIFTH CAUSE OF ACTION
### Against Shirom, Shimunov and Anikeyev
### (Unjust Enrichment)

564.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 563 above.

565.    As set forth above, Shirom, Shimunov and Anikeyev have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

566.    When Liberty Mutual paid the bills and charges submitted by or on behalf of Shirom for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

567.    Shirom, Shimunov and Anikeyev have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

568.    Defendants' retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

569.    By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $55,000.00.

## FORTY-SIXTH CAUSE OF ACTION
### Against Abitbol and Anikeyev
### (Violation of RICO, 18 U.S.C. § 1962(c))

570.     Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 569 above.

571.     Urban Well Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

572.     Abitbol and Anikeyev knowingly have conducted and/or participated, directly or indirectly, in the conduct of Urban Well's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills on a continuous basis for over two years seeking payments that Urban Well was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the billed-for services were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control Urban Well in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of Urban Well. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "12."

573.     Urban Well's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Abitbol and Anikeyev operate Urban Well, insofar as Urban Well never has been eligible to bill for or collect No-Fault Benefits, and acts of mail fraud therefore are

essential in order for Urban Well to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through Urban Well to the present day.

574. Urban Well is engaged in inherently unlawful acts, inasmuch as its very corporate existence is an unlawful act, considering that it is fraudulently incorporated, owned and controlled by non-acupuncturists, and its existence therefore depends on continuing misrepresentations made to the New York State Department of Education and the New York State Department of State. Urban Well likewise is engaged in inherently unlawful acts inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to Liberty Mutual and other insurers. These inherently unlawful acts are taken by Liberty Mutual in pursuit of inherently unlawful goals – namely, the theft of money from Liberty Mutual and other insurers through fraudulent No-Fault billing.

575. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $45,000.00 pursuant to the fraudulent bills submitted by the Defendants through Urban Well since May 21, 2008.

576. By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

### FORTY-SEVENTH CAUSE OF ACTION
**Against Abitbol and Anikeyev**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

577. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 576 above.

578. Urban Well Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

579. Abitbol and Anikeyev are employed by and/or associated with the Urban Well enterprise.

580. Abitbol and Anikeyev knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Urban Well enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills seeking payments that Urban Well was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the billed-for services were performed, were unbundled and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control Urban Well in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of Urban Well. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "12." Each such mailing was made in furtherance of the mail fraud scheme.

581. Abitbol and Anikeyev knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud Liberty Mutual and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to Liberty Mutual.

582. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $45,000.00 pursuant to the fraudulent bills submitted by the Defendants through Urban Well.

583. By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

### FORTY-EIGHTH CAUSE OF ACTION
### Against Urban Well, Abitbol and Anikeyev
### (Common Law Fraud)

584. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 583 above.

585. Urban Well, Abitbol and Anikeyev intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual and concealed material facts from Liberty Mutual in the course of their submission of hundreds of fraudulent bills seeking payment for acupuncture services.

586. The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that Urban Well is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact it is fraudulently incorporated and actually owned and controlled by non-acupuncturists; (ii) in every claim, the representation that Urban Well is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact the professional corporation engages in illegal fee-splitting with non-acupuncturists; (iii) in every claim, the representation that the billed-for services were properly billed, when in fact the billed-for services were inflated,

unbundled and were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals that own and control Urban Well in contravention of New York law; and (iv) in virtually all of the claims that the billed-for services were for services provided by employees of Urban Well, when, in fact, the services were provided by independent contractors and not employees of Urban Well.

587.    Urban Well, Abitbol and Anikeyev intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce Liberty Mutual to pay charges submitted through Urban Well that were not compensable under the No-Fault Laws.

588.    Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $45,000.00 pursuant to the fraudulent bills submitted by the Defendants through Urban Well.

589.    The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

590.    Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## FORTY-NINTH CAUSE OF ACTION
### Against Urban Well, Abitbol and Anikeyev
### (Unjust Enrichment)

591.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 590 above.

592.    As set forth above, Urban Well, Abitbol and Anikeyev have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

134

593. When Liberty Mutual paid the bills and charges submitted by or on behalf of Urban Well for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

594. Urban Well, Abitbol and Anikeyev have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

595. Defendants' retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

596. By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $45,000.00.

## FIFTIETH CAUSE OF ACTION
### Against Zapolsky and Anikeyev
### (Violation of RICO, 18 U.S.C. § 1962(c))

597. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 596 above.

598. Approach Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

599. Zapolsky and Anikeyev knowingly have conducted and/or participated, directly or indirectly, in the conduct of Approach's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills on a continuous basis for over two years seeking payments that Approach was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the

billed-for services were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control Approach in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of Approach. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "13."

600. Approach's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Zapolsky and Anikeyev operate Approach, insofar as Approach never has been eligible to bill for or collect No-Fault Benefits, and acts of mail fraud therefore are essential in order for Approach to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through Approach to the present day.

601. Approach is engaged in inherently unlawful acts, inasmuch as its very corporate existence is an unlawful act, considering that it is fraudulently incorporated, owned and controlled by non-acupuncturists, and its existence therefore depends on continuing misrepresentations made to the New York State Department of Education and the New York State Department of State. Approach likewise is engaged in inherently unlawful acts inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to Liberty Mutual and other insurers. These inherently unlawful acts are taken by Liberty Mutual in pursuit of inherently unlawful goals – namely, the theft of money from Liberty Mutual and other insurers through fraudulent No-Fault billing.

602. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $92,000.00 pursuant to the fraudulent bills submitted by the Defendants through Approach since December 26, 2008.

603. By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## FIFTY-FIRST CAUSE OF ACTION
### Against Zapolsky and Anikeyev
### (Violation of RICO, 18 U.S.C. § 1962(d))

604. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 603 above.

605. Acupuncture Approach, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

606. Zapolsky and Anikeyev are employed by and/or associated with the Approach enterprise.

607. Zapolsky and Anikeyev knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Approach enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills seeking payments that Approach was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the billed-for services were performed, were unbundled and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the

unlicensed individuals and entities that own and control Approach in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of Approach. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "13." Each such mailing was made in furtherance of the mail fraud scheme.

608. Zapolsky and Anikeyev knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud Liberty Mutual and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to Liberty Mutual.

609. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $92,000.00 pursuant to the fraudulent bills submitted by the Defendants through Approach.

610. By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

### FIFTY-SECOND CAUSE OF ACTION
**Against Approach, Zapolsky and Anikeyev**
**(Common Law Fraud)**

611. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 610 above.

612. Approach, Zapolsky and Anikeyev intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual and concealed material facts from Liberty Mutual in the course of their submission of hundreds of fraudulent bills seeking payment for acupuncture services.

613. The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that Approach is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact it is fraudulently incorporated and actually owned and controlled by non-acupuncturists; (ii) in every claim, the representation that Approach is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact the professional corporation engages in illegal fee-splitting with non-acupuncturists; (iii) in every claim, the representation that the billed-for services were properly billed, when in fact the billed-for services were inflated, unbundled and were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals that own and control Approach in contravention of New York law; and (iv) in virtually all of the claims that the billed-for services were for services provided by employees of Approach, when, in fact, the services were provided by independent contractors and not employees of Approach.

614. Approach, Zapolsky and Anikeyev intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce Liberty Mutual to pay charges submitted through Approach that were not compensable under the No-Fault Laws.

615. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $92,000.00 pursuant to the fraudulent bills submitted by the Defendants through Approach.

616. The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

617. Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## FIFTY-THIRD CAUSE OF ACTION
### Against Approach, Zapolsky and Anikeyev
### (Unjust Enrichment)

618. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 617 above.

619. As set forth above, Approach, Zapolsky and Anikeyev have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

620. When Liberty Mutual paid the bills and charges submitted by or on behalf of Approach for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

621. Approach, Zapolsky and Anikeyev have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

622. Defendants' retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

623. By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $92,000.00.

## FIFTY-FOURTH CAUSE OF ACTION
### Against Kulagina and Anikeyev
### (Violation of RICO, 18 U.S.C. § 1962(c))

624.     Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 623 above.

625.     SML Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

626.     Kulagina and Anikeyev knowingly have conducted and/or participated, directly or indirectly, in the conduct of SML's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills on a continuous basis for over two years seeking payments that SML was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the billed-for services were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control SML in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of SML. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "14."

627.     SML's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Kulagina and Anikeyev operate SML, insofar as SML never has been eligible to bill for or collect No-Fault Benefits, and acts of mail fraud therefore are essential in

141

order for SML to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through SML to the present day.

628. SML is engaged in inherently unlawful acts, inasmuch as its very corporate existence is an unlawful act, considering that it is fraudulently incorporated, owned and controlled by non-acupuncturists, and its existence therefore depends on continuing misrepresentations made to the New York State Department of Education and the New York State Department of State. SML likewise is engaged in inherently unlawful acts inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to Liberty Mutual and other insurers. These inherently unlawful acts are taken by Liberty Mutual in pursuit of inherently unlawful goals – namely, the theft of money from Liberty Mutual and other insurers through fraudulent No-Fault billing.

629. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $102,000.00 pursuant to the fraudulent bills submitted by the Defendants through SML since May 11, 2009.

630. By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

### FIFTY-FIFTH CAUSE OF ACTION
### Against Kulagina and Anikeyev
### (Violation of RICO, 18 U.S.C. § 1962(d))

631. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 630 above.

632. SML Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

633. Kulagina and Anikeyev are employed by and/or associated with the SML enterprise.

634. Kulagina and Anikeyev knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the SML enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills seeking payments that SML was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the billed-for services were performed, were unbundled and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control SML in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of SML. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "14." Each such mailing was made in furtherance of the mail fraud scheme.

635. Kulagina and Anikeyev knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud Liberty Mutual and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to Liberty Mutual.

636. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $102,000.00 pursuant to the fraudulent bills submitted by the Defendants through SML.

637. By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**FIFTY-SIXTH CAUSE OF ACTION**
**Against SML, Kulagina and Anikeyev**
**(Common Law Fraud)**

638. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 637 above.

639. SML, Kulagina and Anikeyev intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual and concealed material facts from Liberty Mutual in the course of their submission of hundreds of fraudulent bills seeking payment for acupuncture services.

640. The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that SML is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact it is fraudulently incorporated and actually owned and controlled by non-acupuncturists; (ii) in every claim, the representation that SML is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact the professional corporation engages in illegal fee-splitting with non-acupuncturists; (iii) in every claim, the representation that the billed-for services were properly billed, when in fact the billed-for services were inflated,

unbundled and were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals that own and control SML in contravention of New York law; and (iv) in virtually all of the claims that the billed-for services were for services provided by employees of SML, when, in fact, the services were provided by independent contractors and not employees of SML.

641.    SML, Kulagina and Anikeyev intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce Liberty Mutual to pay charges submitted through SML that were not compensable under the No-Fault Laws.

642.    Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $102,000.00 pursuant to the fraudulent bills submitted by the Defendants through SML.

643.    The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

644.    Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## FIFTY-SEVENTH CAUSE OF ACTION
### Against SML, Kulagina and Anikeyev
### (Unjust Enrichment)

645.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 644 above.

646.    As set forth above, SML, Kulagina and Anikeyev have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

647. When Liberty Mutual paid the bills and charges submitted by or on behalf of SML for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

648. SML, Kulagina and Anikeyev have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

649. Defendants' retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

650. By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $102,000.00.

## FIFTY-EIGHTH CAUSE OF ACTION
### Against Shimunov and Anikeyev
### (Violation of RICO, 18 U.S.C. § 1962(c))

651. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 650 above.

652. Bronx Acupuncture Therapy, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

653. Shimunov and Anikeyev knowingly have conducted and/or participated, directly or indirectly, in the conduct of Bronx Therapy's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills on a continuous basis for over two years seeking payments that Bronx Therapy was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the

billed-for services were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control Bronx Therapy in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of Bronx Therapy. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "15."

654. Bronx Therapy's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Shimunov and Anikeyev operate Bronx Therapy, insofar as Bronx Therapy never has been eligible to bill for or collect No-Fault Benefits, and acts of mail fraud therefore are essential in order for Bronx Therapy to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through Bronx Therapy to the present day.

655. Bronx Therapy is engaged in inherently unlawful acts, inasmuch as its very corporate existence is an unlawful act, considering that it is fraudulently incorporated, owned and controlled by non-acupuncturists, and its existence therefore depends on continuing misrepresentations made to the New York State Department of Education and the New York State Department of State. Bronx Therapy likewise is engaged in inherently unlawful acts inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to Liberty Mutual and other insurers. These inherently unlawful acts are taken by Liberty Mutual in pursuit of inherently unlawful goals – namely, the theft of money from Liberty Mutual and other insurers through fraudulent No-Fault billing.

656.   Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $38,000.00 pursuant to the fraudulent bills submitted by the Defendants through Bronx Therapy since December 4, 2009.

657.   By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## FIFTY-NINTH CAUSE OF ACTION
### Against Shimunov and Anikeyev
### (Violation of RICO, 18 U.S.C. § 1962(d))

658.   Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 657 above.

659.   Bronx Therapy Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

660.   Shimunov and Anikeyev are employed by and/or associated with the Bronx Therapy enterprise.

661.   Shimunov and Anikeyev knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Bronx Therapy enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills seeking payments that Bronx Therapy was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the billed-for services were performed, were unbundled and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich

the unlicensed individuals and entities that own and control Bronx Therapy in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of Bronx Therapy. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "15." Each such mailing was made in furtherance of the mail fraud scheme.

662. Shimunov and Anikeyev knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud Liberty Mutual and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to Liberty Mutual.

663. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $38,000.00 pursuant to the fraudulent bills submitted by the Defendants through Bronx Therapy.

664. By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**SIXTIETH CAUSE OF ACTION**
**Against Bronx Therapy, Shimunov and Anikeyev**
**(Common Law Fraud)**

665. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 664 above.

666. Bronx Therapy, Shimunov and Anikeyev intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual and concealed material facts from Liberty Mutual in the course of their submission of hundreds of fraudulent bills seeking payment for acupuncture services.

667. The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that Bronx Therapy is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact it is fraudulently incorporated and actually owned and controlled by non-acupuncturists; (ii) in every claim, the representation that Bronx Therapy is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact the professional corporation engages in illegal fee-splitting with non-acupuncturists; (iii) in every claim, the representation that the billed-for services were properly billed, when in fact the billed-for services were inflated, unbundled and were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals that own and control Bronx Therapy in contravention of New York law; and (iv) in virtually all of the claims that the billed-for services were for services provided by employees of Bronx Therapy, when, in fact, the services were provided by independent contractors and not employees of Bronx Therapy.

668. Bronx Therapy, Shimunov and Anikeyev intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce Liberty Mutual to pay charges submitted through Bronx Therapy that were not compensable under the No-Fault Laws.

669. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $38,000.00 pursuant to the fraudulent bills submitted by the Defendants through Bronx Therapy.

670. The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

150

671. Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## SIXTY-FIRST CAUSE OF ACTION
### Against Bronx Therapy, Shimunov and Anikeyev
### (Unjust Enrichment)

672. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 671 above.

673. As set forth above, Bronx Therapy, Shimunov and Anikeyev have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

674. When Liberty Mutual paid the bills and charges submitted by or on behalf of Bronx Therapy for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

675. Bronx Therapy, Shimunov and Anikeyev have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

676. Defendants' retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

677. By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $38,000.00.

**SIXTY-SECOND CAUSE OF ACTION**
**Against Shkapenyuk and Anikeyev**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

678. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 677 above.

679. TC Acupuncture, PC is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

680. Shkapenyuk and Anikeyev knowingly have conducted and/or participated, directly or indirectly, in the conduct of TC's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills on a continuous basis for over two years seeking payments that TC was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the billed-for services were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control TC in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of TC. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "16."

681. TC's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Shkapenyuk and Anikeyev operate TC, insofar as TC never has been eligible to bill for or collect No-Fault Benefits, and acts of mail fraud therefore are essential in

order for TC to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through TC to the present day.

682. TC is engaged in inherently unlawful acts, inasmuch as its very corporate existence is an unlawful act, considering that it is fraudulently incorporated, owned and controlled by non-acupuncturists, and its existence therefore depends on continuing misrepresentations made to the New York State Department of Education and the New York State Department of State. TC likewise is engaged in inherently unlawful acts inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to Liberty Mutual and other insurers. These inherently unlawful acts are taken by Liberty Mutual in pursuit of inherently unlawful goals – namely, the theft of money from Liberty Mutual and other insurers through fraudulent No-Fault billing.

683. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $29,000.00 pursuant to the fraudulent bills submitted by the Defendants through TC since June 24, 2010.

684. By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## SIXTY-THIRD CAUSE OF ACTION
### Against Shkapenyuk and Anikeyev
### (Violation of RICO, 18 U.S.C. § 1962(d))

685. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 684 above.

686. TC Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

687. Shkapenyuk and Anikeyev are employed by and/or associated with the TC enterprise.

688. Shkapenyuk and Anikeyev knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the TC enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills seeking payments that TC was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the billed-for services were performed, were unbundled and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control TC in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of TC. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "16." Each such mailing was made in furtherance of the mail fraud scheme.

689. Shkapenyuk and Anikeyev knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud Liberty Mutual and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to Liberty Mutual.

690.    Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $29,000.00 pursuant to the fraudulent bills submitted by the Defendants through TC.

691.    By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## SIXTY-FOURTH CAUSE OF ACTION
### Against TC, Shkapenyuk and Anikeyev
### (Common Law Fraud)

692.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 691 above.

693.    TC, Shkapenyuk and Anikeyev intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual and concealed material facts from Liberty Mutual in the course of their submission of hundreds of fraudulent bills seeking payment for acupuncture services.

694.    The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that TC is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact it is fraudulently incorporated and actually owned and controlled by non-acupuncturists; (ii) in every claim, the representation that TC is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact the professional corporation engages in illegal fee-splitting with non-acupuncturists; (iii) in every claim, the representation that the billed-for services were properly billed, when in fact the billed-for services were inflated,

unbundled and were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals that own and control TC in contravention of New York law; and (iv) in virtually all of the claims that the billed for services were for provided by employees of TC, when in fact, the services were provided by independent contractors and not employees of TC.

695.    TC, Shkapenyuk and Anikeyev intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce Liberty Mutual to pay charges submitted through TC that were not compensable under the No-Fault Laws.

696.    Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $29,000.00 pursuant to the fraudulent bills submitted by the Defendants through TC.

697.    The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

698.    Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## SIXTY-FIFTH CAUSE OF ACTION
### Against TC, Shkapenyuk and Anikeyev
### (Unjust Enrichment)

699.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 698 above.

700.    As set forth above, TC, Shkapenyuk and Anikeyev have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

701. When Liberty Mutual paid the bills and charges submitted by or on behalf of TC for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

702. TC, Shkapenyuk and Anikeyev have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

703. Defendants' retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

704. By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $29,000.00.

## SIXTY-SIXTH CAUSE OF ACTION
### Against Kornilova and Anikeyev
### (Violation of RICO, 18 U.S.C. § 1962(c))

705. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 704 above.

706. Acuhealth Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

707. Kornilova and Anikeyev knowingly have conducted and/or participated, directly or indirectly, in the conduct of Acuhealth's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills on a continuous basis for over two years seeking payments that Acuhealth was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the

157

billed-for services were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control Acuhealth in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of Acuhealth. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "17."

708.    Acuhealth's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Kornilova and Anikeyev operate Acuhealth, insofar as Acuhealth never has been eligible to bill for or collect No-Fault Benefits, and acts of mail fraud therefore are essential in order for Acuhealth to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through Acuhealth to the present day.

709.    Acuhealth is engaged in inherently unlawful acts, inasmuch as its very corporate existence is an unlawful act, considering that it is fraudulently incorporated, owned and controlled by non-acupuncturists, and its existence therefore depends on continuing misrepresentations made to the New York State Department of Education and the New York State Department of State. Acuhealth likewise is engaged in inherently unlawful acts inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to Liberty Mutual and other insurers. These inherently unlawful acts are taken by Liberty Mutual in pursuit of inherently unlawful goals – namely, the theft of money from Liberty Mutual and other insurers through fraudulent No-Fault billing.

710.     Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $18,000.00 pursuant to the fraudulent bills submitted by the Defendants through Acuhealth since June 24, 2010.

711.     By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## SIXTY-SEVENTH CAUSE OF ACTION
### Against Kornilova and Anikeyev
### (Violation of RICO, 18 U.S.C. § 1962(d))

712.     Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 711 above.

713.     Acuhealth Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

714.     Kornilova and Anikeyev are employed by and/or associated with the Acuhealth enterprise.

715.     Kornilova and Anikeyev knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Acuhealth enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills seeking payments that Acuhealth was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the billed-for services were performed, were unbundled and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the

unlicensed individuals and entities that own and control Acuhealth in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of Acuhealth. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "17." Each such mailing was made in furtherance of the mail fraud scheme.

716. Kornilova and Anikeyev knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud Liberty Mutual and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to Liberty Mutual.

717. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $18,000.00 pursuant to the fraudulent bills submitted by the Defendants through Acuhealth.

718. By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

### SIXTY-EIGHTH CAUSE OF ACTION
### Against Acuhealth, Kornilova and Anikeyev
### (Common Law Fraud)

719. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 718 above.

720. Acuhealth, Kornilova and Anikeyev intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual and concealed material facts from Liberty Mutual in the course of their submission of hundreds of fraudulent bills seeking payment for acupuncture services.

160

721.    The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that Acuhealth is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact it is fraudulently incorporated and actually owned and controlled by non-acupuncturists; (ii) in every claim, the representation that Acuhealth is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact the professional corporation engages in illegal fee-splitting with non-acupuncturists; (iii) in every claim, the representation that the billed-for services were properly billed, when in fact the billed-for services were inflated, unbundled and were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals that own and control Acuhealth in contravention of New York law; and (iv) in virtually all of the claims that the billed for services were for provided by employees of Acuhealth, when in fact, the services were provided by independent contractors and not employees of Acuhealth.

722.    Acuhealth, Kornilova and Anikeyev intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce Liberty Mutual to pay charges submitted through Acuhealth that were not compensable under the No-Fault Laws.

723.    Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $18,000.00 pursuant to the fraudulent bills submitted by the Defendants through Acuhealth.

724.    The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

725. Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## SIXTY-NINTH CAUSE OF ACTION
### Against Acuhealth, Kornilova and Anikeyev
### (Unjust Enrichment)

726. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 725 above.

727. As set forth above, Acuhealth, Kornilova and Anikeyev have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

728. When Liberty Mutual paid the bills and charges submitted by or on behalf of Acuhealth for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

729. Acuhealth, Kornilova and Anikeyev have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

730. Defendants' retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

731. By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $18,000.00.

## SEVENTIETH CAUSE OF ACTION
### Against Razzakova and Anikeyev
### (Violation of RICO, 18 U.S.C. § 1962(c))

732.     Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 731 above.

733.     NR Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

734.     Razzakova and Anikeyev knowingly have conducted and/or participated, directly or indirectly, in the conduct of NR's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills on a continuous basis for over two years seeking payments that NR was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the billed-for services were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control NR in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of NR.   A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "18."

735.     NR's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers.   The predicate acts of mail fraud are the regular way in which Razzakova and Anikeyev operate NR, insofar as NR never has been eligible to bill for or collect No-Fault Benefits, and acts of mail fraud therefore are essential in

163

order for NR to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through NR to the present day.

736. NR is engaged in inherently unlawful acts, inasmuch as its very corporate existence is an unlawful act, considering that it is fraudulently incorporated, owned and controlled by non-acupuncturists, and its existence therefore depends on continuing misrepresentations made to the New York State Department of Education and the New York State Department of State. NR likewise is engaged in inherently unlawful acts inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to Liberty Mutual and other insurers. These inherently unlawful acts are taken by Liberty Mutual in pursuit of inherently unlawful goals – namely, the theft of money from Liberty Mutual and other insurers through fraudulent No-Fault billing.

737. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $14,000.00 pursuant to the fraudulent bills submitted by the Defendants through NR since October 4, 2010.

738. By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## SEVENTY-FIRST CAUSE OF ACTION
### Against Razzakova and Anikeyev
### (Violation of RICO, 18 U.S.C. § 1962(d))

739. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 738 above.

740. NR Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

741. Razzakova and Anikeyev are employed by and/or associated with the NR enterprise.

742. Razzakova and Anikeyev knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the NR enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills seeking payments that NR was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the billed-for services were performed, were unbundled and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control NR in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of NR. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "18." Each such mailing was made in furtherance of the mail fraud scheme.

743. Razzakova and Anikeyev knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud Liberty Mutual and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to Liberty Mutual.

744. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $14,000.00 pursuant to the fraudulent bills submitted by the Defendants through NR.

745. By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## SEVENTY-SECOND CAUSE OF ACTION
### Against NR, Razzakova and Anikeyev
### (Common Law Fraud)

746. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 745 above.

747. NR, Razzakova and Anikeyev intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual and concealed material facts from Liberty Mutual in the course of their submission of hundreds of fraudulent bills seeking payment for acupuncture services.

748. The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that NR is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact it is fraudulently incorporated and actually owned and controlled by non-acupuncturists; (ii) in every claim, the representation that NR is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact the professional corporation engages in illegal fee-splitting with non-acupuncturists; (iii) in every claim, the representation that the billed-for services were properly billed, when in fact the billed-for services were inflated,

unbundled and were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals that own and control NR in contravention of New York law, and in many cases were not performed at all; and (iv) in virtually all of the claims that the billed-for services were for services provided by employees of NR, when, in fact, the services were provided by independent contractors and not employees of NR.

749.     NR, Razzakova and Anikeyev intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce Liberty Mutual to pay charges submitted through NR that were not compensable under the No-Fault Laws.

750.     Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $14,000.00 pursuant to the fraudulent bills submitted by the Defendants through NR.

751.     The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

752.     Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**SEVENTY-THIRD CAUSE OF ACTION**
**Against NR, Razzakova and Anikeyev**
**(Unjust Enrichment)**

753.     Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 752 above.

754.     As set forth above, NR, Razzakova and Anikeyev have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

755.    When Liberty Mutual paid the bills and charges submitted by or on behalf of NR for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

756.    NR, Razzakova and Anikeyev have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

757.    Defendants' retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

758.    By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $14,000.00.

## SEVENTY-FOURTH CAUSE OF ACTION
### Against Tsukanov and Anikeyev
### (Violation of RICO, 18 U.S.C. § 1962(c))

759.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 758 above.

760.    Silver Lotus Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

761.    Tsukanov and Anikeyev knowingly have conducted and/or participated, directly or indirectly, in the conduct of Silver Lotus's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills on a continuous basis for over two years seeking payments that Silver Lotus was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the

billed-for services were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control Silver Lotus in contravention of New York law; and (iv) the billed-for services were provided by independent contractors and not employees of Silver Lotus. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "19."

762. Silver Lotus's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Tsukanov and Anikeyev operate Silver Lotus, insofar as Silver Lotus never has been eligible to bill for or collect No-Fault Benefits, and acts of mail fraud therefore are essential in order for Silver Lotus to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through Silver Lotus to the present day.

763. Silver Lotus is engaged in inherently unlawful acts, inasmuch as its very corporate existence is an unlawful act, considering that it is fraudulently incorporated, owned and controlled by non-acupuncturists, and its existence therefore depends on continuing misrepresentations made to the New York State Department of Education and the New York State Department of State. Silver Lotus likewise is engaged in inherently unlawful acts inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to Liberty Mutual and other insurers. These inherently unlawful acts are taken by Liberty Mutual in pursuit of inherently unlawful goals – namely, the theft of money from Liberty Mutual and other insurers through fraudulent No-Fault billing.

764.     Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $26,000.00 pursuant to the fraudulent bills submitted by the Defendants through Silver Lotus since December 2, 2010.

765.     By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## SEVENTY-FIFTH CAUSE OF ACTION
### Against Tsukanov and Anikeyev
### (Violation of RICO, 18 U.S.C. § 1962(d))

766.     Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 765 above.

767.     Silver Lotus Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

768.     Tsukanov and Anikeyev are employed by and/or associated with the Silver Lotus enterprise.

769.     Tsukanov and Anikeyev knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Silver Lotus enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills seeking payments that Silver Lotus was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the billed-for services were performed, were unbundled and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the

unlicensed individuals and entities that own and control Silver Lotus in contravention of New York law, and in many cases were not performed at all; and (iv) the billed-for services were provided by independent contractors and not employees of Silver Lotus. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "19." Each such mailing was made in furtherance of the mail fraud scheme.

770. Tsukanov and Anikeyev knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud Liberty Mutual and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to Liberty Mutual.

771. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $26,000.00 pursuant to the fraudulent bills submitted by the Defendants through Silver Lotus.

772. By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## SEVENTY-SIXTH CAUSE OF ACTION
### Against Silver Lotus, Tsukanov and Anikeyev
### (Common Law Fraud)

773. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 772 above.

774. Silver Lotus, Tsukanov and Anikeyev intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual and concealed material facts from Liberty

Mutual in the course of their submission of hundreds of fraudulent bills seeking payment for acupuncture services.

775. The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that Silver Lotus is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact it is fraudulently incorporated and actually owned and controlled by non-acupuncturists; (ii) in every claim, the representation that Silver Lotus is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact the professional corporation engages in illegal fee-splitting with non-acupuncturists; (iii) in every claim, the representation that the billed-for services were properly billed, when in fact the billed-for services were inflated, unbundled and were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals that own and control Silver Lotus in contravention of New York law; and (iv) in virtually all of the claims that the billed-for services were for services provided by employees of Silver Lotus, when, in fact, the services were provided by independent contractors and not employees of Silver Lotus.

776. Silver Lotus, Tsukanov and Anikeyev intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce Liberty Mutual to pay charges submitted through Silver Lotus that were not compensable under the No-Fault Laws.

777. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $26,000.00 pursuant to the fraudulent bills submitted by the Defendants through Silver Lotus.

778. The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

779. Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## SEVENTY-SEVENTH CAUSE OF ACTION
### Against Silver Lotus, Tsukanov and Anikeyev
### (Unjust Enrichment)

780. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 779 above.

781. As set forth above, Silver Lotus, Tsukanov and Anikeyev have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

782. When Liberty Mutual paid the bills and charges submitted by or on behalf of Silver Lotus for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

783. Silver Lotus, Tsukanov and Anikeyev have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

784. Defendants' retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

785. By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $26,000.00.

## SEVENTY-EIGHTH CAUSE OF ACTION
### Against Kondranina and Anikeyev
### (Violation of RICO, 18 U.S.C. § 1962(c))

786.     Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 785 above.

787.     New Century Acupuncture, PC is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

788.     Kondranina and Anikeyev knowingly have conducted and/or participated, directly or indirectly, in the conduct of New Century's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills on a continuous basis for over two years seeking payments that New Century was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the billed-for services were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control New Century in contravention of New York law; and (iv) the billed for services were provided by independent contractors and not employees of New Century. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "20."

789.     New Century's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Kondranina and Anikeyev operate New Century, insofar as New Century never has been eligible to bill for or collect No-Fault Benefits, and acts of mail fraud

therefore are essential in order for New Century to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through New Century to the present day.

790. New Century is engaged in inherently unlawful acts, inasmuch as its very corporate existence is an unlawful act, considering that it is fraudulently incorporated, owned and controlled by non-acupuncturists, and its existence therefore depends on continuing misrepresentations made to the New York State Department of Education and the New York State Department of State. New Century likewise is engaged in inherently unlawful acts inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to Liberty Mutual and other insurers. These inherently unlawful acts are taken by Liberty Mutual in pursuit of inherently unlawful goals – namely, the theft of money from Liberty Mutual and other insurers through fraudulent No-Fault billing.

791. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $53,000.00 pursuant to the fraudulent bills submitted by the Defendants through New Century since December 9, 2010.

792. By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

### SEVENTY-NINTH CAUSE OF ACTION
**Against Kondranina and Anikeyev**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

793. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 792 above.

794. New Century Acupuncture, PC is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

795. Kondranina and Anikeyev are employed by and/or associated with the New Century enterprise.

796. Kondranina and Anikeyev knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the New Century enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills seeking payments that New Century was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully incorporated and owned and controlled by non-acupuncturists; (ii) it engaged in fee-splitting with non-acupuncturists; (iii) the billed-for services were performed, were unbundled and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals and entities that own and control New Century in contravention of New York law, and in many cases were not performed at all; and (iv) the billed for services were provided by independent contractors and not employees of New Century. A representative sample of the fraudulent bills and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "20." Each such mailing was made in furtherance of the mail fraud scheme.

797. Kondranina and Anikeyev knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud Liberty Mutual and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to Liberty Mutual.

798. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $53,000.00 pursuant to the fraudulent bills submitted by the Defendants through New Century.

799. By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## EIGHTIETH CAUSE OF ACTION
### Against New Century, Kondranina and Anikeyev
### (Common Law Fraud)

800. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 799 above.

801. New Century, Kondranina and Anikeyev intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual and concealed material facts from Liberty Mutual in the course of their submission of hundreds of fraudulent bills seeking payment for acupuncture services.

802. The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that New Century is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact it is fraudulently incorporated and actually owned and controlled by non-acupuncturists; (ii) in every claim, the representation that New Century is properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact the professional corporation engages in illegal fee-splitting with non-acupuncturists; (iii) in every claim, the representation that the billed-for services were properly billed, when in fact the billed-for services were inflated,

unbundled and were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the unlicensed individuals that own and control New Century in contravention of New York law; and (iv) in virtually all of the claims that the billed for services were for provided by employees of New Century, when in fact, the services were provided by independent contractors and not employees of New Century.

803. New Century, Kondranina and Anikeyev intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce Liberty Mutual to pay charges submitted through New Century that were not compensable under the No-Fault Laws.

804. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $53,000.00 pursuant to the fraudulent bills submitted by the Defendants through New Century.

805. The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

806. Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## EIGHTY-FIRST CAUSE OF ACTION
### Against New Century, Kondranina and Anikeyev
### (Unjust Enrichment)

807. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 806 above.

808. As set forth above, New Century, Kondranina and Anikeyev have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

809. When Liberty Mutual paid the bills and charges submitted by or on behalf of New Century for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

810. New Century, Kondranina and Anikeyev have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

811. Defendants' retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

812. By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $53,000.00.

## JURY DEMAND

813. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury.

**WHEREFORE,** Plaintiffs Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM Insurance Corporation, Liberty Mutual Mid-Atlantic Insurance Company, Liberty County Mutual Insurance Company, LM Property and Casualty Insurance Company, Safeco Insurance

Company of Indiana, American States Insurance Company, American Economy Insurance Company, American Fire and Casualty Company, Consolidated Insurance Company, Employers Insurance Company of Wausau, Excelsior Insurance Company, First National Insurance Company of America, General Insurance Company of America, Indiana Insurance Company, Liberty Insurance Underwriters, Inc., LM General Insurance Company, Ohio Security Insurance Company, Peerless Indemnity Insurance Company, Peerless Insurance Company, Safeco Insurance Company of America, Safeco National Insurance Company, The Midwestern Indemnity Company, The Netherlands Insurance Company, The Ohio Casualty Insurance Company, Wausau Business Insurance Company, Wausau General Insurance Company, Wausau Underwriters Insurance Company and West American Insurance Company demand that a Judgment be entered in its favor:

1.      On the First Cause of Action, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that the PC Defendants have no right to receive payment for any pending bills submitted to Liberty Mutual;

2.      On the Second Cause of Action against O. Lendel, and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $217,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

3.      On the Third Cause of Action against O. Lendel, and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $217,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

4.      On the Fourth Cause of Action against Okslen, O. Lendel, and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in

excess of $217,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

     5.    On the Fifth Cause of Action against Okslen, O. Lendel, and Anikeyev, more than $217,000.00, in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

     6.    On the Sixth Cause of Action against Matskina, and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $7,700.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

     7.    On the Seventh Cause of Action against Matskina, and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $7,700.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

     8.    On the Eighth Cause of Action against Bay Needle, Matskina, and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $7,700.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

     9.    On the Ninth Cause of Action against Bay Needle, Matskina, and Anikeyev, more than $7,700.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

     10.    On the Tenth Cause of Action against Kapustina and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $79,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

11. On the Eleventh Cause of Action against Kapustina and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $79,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

12. On the Twelfth Cause of Action against Perfect Point, Kapustina and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $79,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

13. On the Thirteenth Cause of Action against Perfect Point, Kapustina and Anikeyev, more than $79,000.00, in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

14. On the Fourteenth Cause of Action against Kolomiytseva and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $67,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

15. On the Fifteenth Cause of Action against Kolomiytseva and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $67,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

16. On the Sixteenth Cause of Action against Karina K, Kolomiytseva and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $67,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

17.     On the Seventeenth Cause of Action against Karina K, Kolomiytseva and Anikeyev, more than $67,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

18.     On the Eighteenth Cause of Action against Matskina and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $168,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

19.     On the Nineteenth Cause of Action against Matskina and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $168,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

20.     On the Twentieth Cause of Action against Healthy Way, Matskina and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $168,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

21.     On the Twenty-First Cause of Action against Healthy Way, Matskina and Anikeyev, more than $168,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

22.     On the Twenty-Second Cause of Action against O. Lendel and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $30,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

23.     On the Twenty-Third Cause of Action against O. Lendel and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in

excess of $30,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

24. On the Twenty-Fourth Cause of Action against VS, O. Lendel and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $30,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

25. On the Twenty-Fifth Cause of Action against VS, O. Lendel and Anikeyev, more than $30,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

26. On the Twenty-Sixth of Action against Kolomiytseva and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $37,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

27. On the Twenty-Seventh Cause of Action against Kolomiytseva and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $37,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

28. On the Twenty-Eighth Cause of Action against Alpha, Kolomiytseva and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $37,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

29. On the Twenty-Ninth Cause of Action against Alpha, Kolomiytseva and Anikeyev, more than $37,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

30.   On the Thirtieth Cause of Action against Kornilova and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $64,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

31.   On the Thirty-First Cause of Action against Kornilova and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $64,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

32.   On the Thirty-Second Cause of Action against Lotus, Kornilova and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $64,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

33.   On the Thirty-Third Cause of Action against Lotus, Kornilova and Anikeyev, more than $64,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

34.   On the Thirty-Fourth Cause of Action against Tsukanov and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $111,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

35.   On the Thirty-Fifth Cause of Action against Tsukanov and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $111,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

36. On the Thirty-Sixth Cause of Action against Sunrise, Tsukanov and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $111,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

37. On the Thirty-Seventh Cause of Action against Sunrise, Tsukanov and Anikeyev, more than $111,000.00, in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

38. On the Thirty-Eighth Cause of Action against Kulagina and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $239,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

39. On the Thirty-Ninth Cause of Action against Kulagina and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $239,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

40. On the Fortieth Cause of Action against Easy Care, Kulagina and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $239,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

41. On the Forty-First Cause of Action against Easy Care, Kulagina and Anikeyev, more than $239,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

42. On the Forty-Second Cause of Action against Shimunov and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in

excess of $55,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

43. On the Forty-Third Cause of Action against Shimunov and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $55,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

44. On the Forty-Fourth Cause of Action against Shirom, Shimunov and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $55,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

45. On the Forty-Fifth Cause of Action against Shirom, Shimunov and Anikeyev, more than $55,000.00, in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

46. On the Forty-Sixth Cause of Action against Abitbol and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $45,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

47. On the Forty-Seventh Cause of Action against Abitbol and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $45,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

48. On the Forty-Eighth Cause of Action against Urban Well, Abitbol and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in

excess of $45,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

49.     On the Forty-Ninth Cause of Action against Urban Well, Abitbol and Anikeyev, more than $45,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

50.     On the Fiftieth Cause of Action against Zapolsky and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $92,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

51.     On the Fifty-First Cause of Action against Zapolsky and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $92,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

52.     On the Fifty-Second Cause of Action against Approach, Zapolsky and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $92,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

53.     On the Fifty-Third Cause of Action against Approach, Zapolsky and Anikeyev, more than $92,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

54.     On the Fifty-Fourth Cause of Action against Kulagina and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $102,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

55.     On the Fifty-Fifth Cause of Action against Kulagina and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $102,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

56.     On the Fifty-Sixth Cause of Action against SML, Kulagina and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $102,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

57.     On the Fifty-Seventh Cause of Action against SML, Kulagina and Anikeyev, more than $102,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

58.     On the Fifty-Eighth Cause of Action against Shimunov and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $38,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

59.     On the Fifty-Ninth Cause of Action against Shimunov and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $38,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

60.     On the Sixtieth Cause of Action against Bronx Therapy, Shimunov and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $38,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

61. On the Sixty-First Cause of Action against Bronx Therapy, Shimunov and Anikeyev, more than $38,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

62. On the Sixty-Second Cause of Action against Shkapenyuk and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $29,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

63. On the Sixty-Third Cause of Action against Shkapenyuk and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $29,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

64. On the Sixty-Fourth Cause of Action against TC, Shkapenyuk and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $29,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

65. On the Sixty-Fifth Cause of Action against TC, Shkapenyuk and Anikeyev, more than $29,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

66. On the Sixty-Sixth Cause of Action against Kornilova and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $18,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

67. On the Sixty-Seventh Cause of Action against Kornilova and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in

excess of $18,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

68.     On the Sixty-Eighth Cause of Action against Acuhealth, Kornilova and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $18,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

69.     On the Sixty-Ninth Cause of Action against Acuhealth, Kornilova and Anikeyev, more than $18,000.00, in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

70.     On the Seventieth Cause of Action against Razzakova and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $14,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

71.     On the Seventy-First Cause of Action against Razzakova and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $14,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

72.     On the Seventy-Second Cause of Action against NR, Razzakova and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $14,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

73.     On the Seventy-Third Cause of Action against NR, Razzakova and Anikeyev, more than $14,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

74. On the Seventy-Fourth Cause of Action against Tsukanov and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $26,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

75. On the Seventy-Fifth Cause of Action against Tsukanov and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $26,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

76. On the Seventy-Sixth Cause of Action against Silver Lotus, Tsukanov and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $26,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

77. On the Seventy-Seventh Cause of Action against Silver Lotus, Tsukanov and Anikeyev, more than $26,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

78. On the Seventy-Eighth Cause of Action against Kondranina and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $53,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

79. On the Seventy-Ninth Cause of Action against Kondranina and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $53,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

80. On the Eightieth of Action against New Century, Kondranina and Anikeyev, compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $53,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper; and

81. On the Eighty-First Cause of Action against New Century, Kondranina and Anikeyev, more than $53,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper.

Dated: February 25, 2014
Uniondale, New York

RIVKIN RADLER LLP

By: _____
Michael A. Sirignano (MS 5263)
Barry I. Levy (BL 2190)
Ryan Goldberg (RG 7570)
926 RXR Plaza
Uniondale, New York 11556
(516) 357-3000

*Counsel for Plaintiffs*

2688071 v7